Robert E. GARNER, Trustee of Standard
Milling Company, Plaintiff,

v.

Joe T. BOYD et al., Defendants.

Civ. A. No. 5–679.

United States District Court,
N. D. Texas,
Lubbock Division.

Oct. 20, 1970.

John E. Vickers, Walker Metcalf, Edwin M. O'Connor, Lubbock, Tex., for plaintiff.

Milton L. Bankston, of Stubbeman, McRae, Sealy & Laughlin, Midland, Tex., Benjamin S. Hoarn, Tucson, Ariz., Robert E. Ford, Abilene, Tex., for defendants.

## MEMORANDUM OPINION

WOODWARD, District Judge.

The above case was tried before the Court without a jury and after announcements the parties proceeded to introduce their evidence. At the close of the evidence the Court ordered that the deposition of Joe T. Boyd be taken, and that same would be considered by the Court as a part of the record in this case. All matters have now been submitted to the Court and this memorandum opinion is filed as the Court's Findings of Fact and Conclusions of Law.

Plaintiff is the trustee of the Standard Milling Company, a Texas corporation which was adjudged a bankrupt in this District on April 15, 1969.

The Defendants named in the complaint are Joe T. Boyd; M. S. Knisely; Howard Brookshire; R. B. (Parker) Goodloe; the First National Bank of Atoka, Oklahoma, a National Banking Association; Fred Bannowsky; Dalton Boyd; United's American Milling & Manufacturing Company, a Texas Corporation; United American Industries, Incorporated, a Delaware Corporation a Delaware Corporation (also referred to herein as the Arizona corporation); the Midland National Bank, a National Banking Association; Earl Lewis; and Selwyn Webber.

By Interlocutory Order dated August 24, 1970, it appearing from the evidence that there was no cause of action maintainable against the Defendant, the Midland National Bank, Midland, Texas, it was accordingly ordered that this party be dismissed, with prejudice, and said order also dismissed without prejudice United American Industries, Inc., which dismissal was also stipulated and agreed to by Plaintiff.

It appears from the record in this cause that the following Interlocutory Orders have been entered by the Court pertaining to some of the above-named Defendants, to-wit:

1. Order dated August 19, 1970 dismissing the Defendant, Selwyn Webber, as a defendant, with prejudice.

2. Order dated August 19, 1970 declaring that the Defendant, First National Bank of Atoka had no further right, title or interest in and to the lands and properties of Standard Milling Company by virtue of the deed of trust dated June 19, 1968 and further finding and declaring that the notes secured by said deed of trust were for the benefit of the individuals who were then officers of the corporation rather than being for the benefit of the corporation, and declaring that such indebtedness was not the debt and obligation of the bankrupt.

3. Order dated August 19, 1970 that any titles and assets received by United's American Milling & Manufacturing Company by virtue of the conveyances to it by the First National Bank of Atoka were adjudged to have been received for the use and benefit of the bankrupt, as said Defendant, United's

**24**

American Milling & Manufacturing Company, did not enter any appearance or defense to the Plaintiff's Complaint in this cause.

4. Order dated August 19, 1970 pertaining to the Defendant, Earl Lewis, which is here modified and changed to show that the said Earl Lewis, received only one stock certificate which evidenced the issuance of 50,000 shares of United American Industries, Inc., from the Defendant, M. S. Knisely, and which order of August 19, 1970 ordered the Defendant Lewis to return such shares of stock to the Plaintiff in this cause by September 5, 1970, which has not been done.

The Defendants thus remaining in the case are Joe T. Boyd, M. S. Knisely, Howard Brookshire, R. B. (Parker) Goodloe, the First National Bank of Atoka, Fred Bannowsky, and Dalton Boyd from whom the Plaintiff, Trustee in Bankruptcy for Standard Milling Company, seeks the recovery of 1,733,333 shares of capital stock of United American Industries, Inc., or alternatively, money damages for the conversion of such stock by these Defendants.

On June 4, 1968, all the capital stock of the Standard Milling Company was sold to Lonnie St. Clair, R. W. Bratcher and Selwyn Webber. At the time of this sale, the company was heavily indebted, with liabilities in excess of its assets, and the company was not paying its debts as they became due.

On June 19, 1968, a deed of trust was executed by Standard Milling Company on the realty of the bankrupt to secure payment of two notes each in the amount of $15,000 payable to the First National Bank of Atoka, with Joe T. Boyd as trustee. This lien was given to secure individual obligations of the then officers of the corporation. No consideration was paid to the bankrupt therefor. The financial condition of the bankrupt continued to deteriorate.

On November 1, 1968, all of the stock of Standard Milling Company was sold to Joe T. Boyd, who purchased the corporate stock individually and as agent for Defendants Knisely, Brookshire, and Bannowsky. Also included was a purchaser known as Blue Cross Finance Company.

On April 1, 1969, there was a foreclosure of the deed of trust and a trustee's deed was then executed to the Defendant, First National Bank of Atoka. No consideration appears to have been credited therefor; immediately afterward, the bank executed a deed conveying all of the bankrupt's properties over to United's American Milling & Manufacturing Company. At the same time, letters were forwarded to various creditors, advising them that United's American Milling & Manufacturing Company had bought the property of Standard Milling at a foreclosure.

Although there was a name change, there does not appear to have been any actual change in the business, personnel, or ownership, and it continued to function with the same assets, properties and personnel as Standard Milling had. An audit which the Defendants caused to be made reflects the passage of the assets of Standard Milling into United's American Milling & Manufacturing Company, but omits any reference to the liabilities of the bankrupt, thereby making it appear that the book value of the equity of the new concern was in excess of $400,000.00.

United's American Milling & Manufacturing Company secured a charter of incorporation from the Secretary of the State of Texas on or about April 20, 1969. The application for the charter was signed by Defendants R. B. (Parker) Goodloe, and Dalton Boyd, together with his wife, J. J. Boyd. No stock was ever issued in connection with the new corporation, and apparently no new capital or consideration was paid into the new corporation.

In the early part of April, 1969, negotiations were entered into between Defendant Joe T. Boyd, and Stewart Birnam, executive vice-president of the United American Industries, Inc., of Tucson, Arizona. These negotiations were formalized by a Letter of Intent,

dated April 11, 1969, executed by the president of United American Industries, Inc., and by Defendants R. B. (Parker) Goodloe, Dalton Boyd, Joe T. Boyd, and J. J. Boyd, whereby it was agreed to exchange "the absolute complete ownership of United's American Milling & Manufacturing Co.," for 1,733,333 shares of the capital stock of United American Industries, Inc., of Tucson, Arizona. Though a letter of recission signed by the same parties cancelling this letter of intent was entered on July 15, 1969, the stock of the Arizona corporation was actually delivered to Joe T. Boyd in April of 1969, and the Defendants have since retained possession. Defendants' Exhibits Numbers *2* through *8* show that Joe T. Boyd signed receipts for the stock received by him in behalf of the other Defendants, apparently as their agent.

Defendants' Exhibit 2 acknowledges receipt by Joe T. Boyd on behalf of M. S. Knisely of United American stock certificates #9488/89NR for a total of 100,000 shares.

Defendants' Exhibit 3 acknowledges receipt by Joe T. Boyd on behalf of Dalton Boyd of United American stock certificate #9466NR for a total of 20,000 shares.

Defendants' Exhibit 4 acknowledges receipt by Joe T. Boyd, again on behalf of M. S. Knisely, of United American stock certificates #9467NR–9469NR for a total of 131,667 shares.

Defendants' Exhibit 5 acknowledges receipt by Joe T. Boyd on behalf of Fred Bannowsky of United American stock certificates #9457NR–9460NR for a total of 200,000 shares.

Defendants' Exhibit 6 acknowledges receipt by Joe T. Boyd on behalf of R. B. (Parker) Goodloe of United American stock certificates #9452, 9453, and 9456 for a total of 131,666 shares.

Defendants' Exhibit 7 acknowledges receipt by Joe T. Boyd on behalf of Howard Brookshire of United American stock certificates #9461NR–9465NR for a total of 250,000 shares.

Defendants' Exhibit 8 acknowledges receipt by Joe T. Boyd, for himself, of United American stock certificates #9442NR through 9451NR for a total of 500,000 shares. Unlike the others, this receipt has been stamped "Investment Stock." All the receipts were dated April 16, 1969. The total number of shares represented by Defendants' Exhibits Numbers 2 through 8 is 1,333,333. Additionally, Plaintiff's Exhibit "D", attached to the Complaint and orally stipulated to by both parties in open Court, shows that M. S. Knisely received United American stock certificates #9479NR through 9486NR for a total of 400,000 shares. None of these Defendants paid any consideration for these shares.

While this stipulated Exhibit "D" of Plaintiff indicates that Defendant Fred Bannowsky assigned 50,000 of his total 200,000 shares to the First National Bank of Atoka, there is no evidence, either from testimony, depositions or exhibits, indicative that the Atoka Bank was anything other than a bona fide purchaser for value of these shares. For all that the evidence shows, with regard to the United American shares, the First National Bank of Atoka stands in as good a position as the First National Bank of Midland. Accordingly, it is ordered that the First National Bank of Atoka be dismissed as a party defendant to this suit, subject to requirements of the Interlocutory Order of August 19, 1970.

The instrument designated as a letter of intent of April 11, 1969 is in reality a contract. A true letter of intent is customarily employed to reduce to writing a preliminary understanding of the parties. Dunhill Securities Corporation v. Microthermal Applications, Inc., 308 F.Supp. 195 (S.D.N.Y.1969). Even where a later and formal writing is contemplated by the parties, a contract may nonetheless arise before the execution of that writing. Banking & Trading Corporation, Ltd. v. Floete, 257 F.2d 765 (2d Cir. 1958). When the parties have agreed upon all material considera-

tions and intend to be presently bound, the later writing serves merely as a convenient memorial of previously agreed on terms. In this instance, the minds of the parties had met upon all the essential elements of a contract, and the acts to be performed were clear and unambiguous. So clear were they that all the contemplated acts were indeed performed: Joe T. Boyd received, on behalf of himself and the other named Defendants, the stock of the Arizona Corporation in exchange for "complete ownership" of United's American Milling & Manufacturing Company.

Defendant Joe T. Boyd exchanged the assets of Standard Milling Company, or whatever equity he owned in the assets, for the stock of the Arizona corporation. Though the letter of intent was ostensibly a contract between the Arizona corporation and Joe T. Boyd, individually, R. B. (Parker) Goodloe, Dalton Boyd, and J. J. Boyd, the latter three individually and as incorporators of United's American Milling & Manufacturing Company, the fact nonetheless remains that the only property traded to the Arizona corporation was that of the bankrupt. Equity will not allow the Defendants to accomplish indirectly what they may not do directly; a sham transaction is not avoided merely by changing a name. The only consideration paid to the Arizona corporation, irrespective of whether such consideration had any value, was the property of the bankrupt. Therefore, the bankrupt should have the benefit of that contract and the properties derived therefrom.

On April 15, 1969, when Standard Milling Company was adjudged a bankrupt, whatever assets the corporation owned passed at that moment to the trustee in bankruptcy and this would include any benefits the bankrupt had under and by virtue of the contract between Boyd, et al, and the Arizona corporation. Bankruptcy Act § 70a. This being so, the letter of recission dated July 15, 1969 was without force or effect. This recission agreement, signed by the identical parties who signed the letter of intent, sought to return to the Arizona corporation all stock issued to the Defendants, but since title to said stock vested in the trustee in bankruptcy on April 15, 1969, there was no ownership in the Defendants which could be returned. The letter of recission was merely an attempt on the part of the Arizona corporation to correct what it deemed to be a poorly conceived transaction.

Whenever a fiduciary engages in self-dealing by using the assets of another to gain a profit for himself, not only the original assets but the profit gained become the property of the beneficiary, Marcus v. Otis, 168 F.2d 649 (2d Cir. 1948); Hunter v. Shell Oil Co., 198 F.2d 485 (5th Cir. 1952); Teren v. Howard, 322 F.2d 949 (9th Cir. 1969), and this is true even though the claimant has suffered no actual loss, or his loss is less than the errant fiduciary's gain, Maryland National Bank v. Tower, 374 F.2d 381 (4th Cir. 1967). The latter doctrine rests on the sound basis of preventing a faithless trustee from unjustly enriching himself as a result of his breach of fiduciary duty. Standard Machinery Company v. Duncan Shaw Corporation, 208 F.2d 61 (1st Cir. 1953). Furthermore, if unjust enrichment exists on the basis of a fiduciary relationship, equity may grant relief on that ground alone, even without resort to its general jurisdiction over fraud. Liken v. Shaffer, 141 F.2d 877 (8th Cir. 1944), cert. denied, Wilson v. Shaffer, 323 U.S. 756, 65 S.Ct. 90, 89 L.Ed. 605 (1944). Hence, it is apparent that the shares of stock in question have become the property of the trustee in bankruptcy. It is clear to the Court that a common scheme existed among at least some of the Defendants to transfer the assets of the bankrupt into a "new" concern for the purpose of defrauding the creditors of Standard Milling Company. This done, the Defendants then traded the charter of incorporation of the "new" concern for the shares of stock in the Arizona corporation. The entire transaction was in fraud of the creditors of Standard Mill-

ing Company within the meaning of section 67(d) of the Bankruptcy Act.

Accordingly, it is the Order of this Court that all shares of stock of United American Industries, Inc., of Tucson, Arizona, still in the hands of the Defendants, are hereby declared to be the property of the Plaintiff, Trustee in Bankruptcy for Standard Milling Company. The following named Defendants are ordered to return the stock certificates to Plaintiff on or before November 15, 1970.

It appears from the evidence in the case that such shares of stock in the Arizona corporation had a market value of eight (8¢) cents per share at the time of the trial of this cause.

It appears from the findings of fact herein made and the conclusions of law herein made that judgment of this Court should be entered that the Plaintiff recover of and from the below named Defendants the respective number of shares in the United American Industries, Inc., a Delaware Corporation and which is also referred to herein as the Arizona corporation, and that each of said Defendants convey to the Plaintiff and deliver to the Plaintiff on or before November 15, 1970, the shares of stock and certificates representing such shares in such amounts. In the event that Defendants shall fail to make such conveyance and transfer on or before November 15, 1970, the Plaintiff shall have and recover of and against each Defendant a sum of eight cents (8¢) for any share not so delivered and as herein ordered. Plaintiff shall have such judgment for recovery of stock or the money damages in lieu thereof with respect to the following Defendants:

| | | |
|---|---|---|
| Joe T. Boyd | — 500,000 | shares (restricted) |
| M. S. Knisely | — 631,667 | shares |
| Howard Brookshire | — 250,000 | shares |
| R. B. (Parker) Goodloe | — 131,666 | shares |
| Fred Bannowsky | — 200,000 | shares |
| Dalton Boyd | — 20,000 | shares |
| | 1,733,333 | total number of shares. |

Costs are adjudged against the above named Defendants.