Chester R. ROBINSON and wife, Frances Earline Robinson, Plaintiffs-Appellants,

and

Roy K. Ewart and David B. Black, Appellants,

v.

The NATIONAL CASH REGISTER COMPANY, et al., Defendants-Appellees.

No. 85–2019.

United States Court of Appeals, Fifth Circuit.

Feb. 4, 1987.

Rehearing Denied March 5, 1987.

David B. Black, Roy K. Ewart, Black & Ewart, Houston, Tex., for Black and Ewart.

Chester R. Robinson, pro se.

Sarah B. Duncan, Fulbright & Jaworski, Brian S. Greig, Austin, Tex., for Nat. Cash Register Co.

William Drew Perkins, Lufkin, Tex., for Henderson Development Corp.

Before GEE and HILL, Circuit Judges, and HUNTER,* District Judge.

ROBERT MADDEN HILL, Circuit Judge:

In this case plaintiffs Chester and Frances Robinson (the Robinsons) appeal from a judgment of the district court that barred their suit on res judicata grounds. The Robinsons and their attorneys, David Black and Roy Ewart, also appeal the sanctions imposed upon them by the district court

---

* District Judge of the Western District of Louisiana, sitting by designation.

pursuant to Fed.R.Civ.P. 11. We affirm in part and reverse in part.

## I.

On August 31, 1981, the Robinsons filed a diversity action against National Cash Register (NCR) in the federal district court for the Eastern District of Texas, seeking $4 million for damages allegedly incurred as a result of NCR's contamination of the air breathed by the Robinsons in the office space subleased to them by NCR. NCR leased the Robinsons' space from Henderson Development Corporation (HDC). The Robinsons alleged that NCR's conduct was negligent, constituted a nuisance, and also breached the implied warranties of habitability in the sublease. On May 10, 1983, a jury verdict was returned in favor of NCR and judgment accordingly entered on the verdict for NCR, from which there was no appeal.

On February 8, 1984, Bookkeepers Tax Services, Inc. (BTS) and the Robinsons filed an action against NCR and HDC in state court in Angelina County, Texas. Chester Robinson is the majority stockholder and president of BTS, while Frances Robinson is secretary-treasurer of the company and serves on its board of directors. BTS and the Robinsons sought $4 million in damages from NCR and HDC alleging that the defendants had breached the express warranties in the original lease between HDC and NCR and in the sublease between NCR and the Robinsons. BTS and the Robinsons also alleged that HDC and NCR violated the Texas Deceptive Trade Practices Act.

NCR removed the second action to the federal district court based on diversity jurisdiction and then filed a motion to dismiss the action on res judicata grounds as to NCR and to dismiss HDC on the grounds that no claim against them was possible. The Robinsons and BTS filed a motion to remand the case to state court alleging that there was a lack of diversity because the Robinsons were Texas citizens and HDC was a Texas corporation. The district judge, who also presided over the Robinsons' 1981 suit against NCR, denied the plaintiffs' motion to remand, dismissed NCR on res judicata grounds, and dismissed HDC because it was not a real party to the suit. The court also imposed sanctions under Fed.R.Civ.P. 11 in the amount of $4,246.25 jointly and severally against the Robinsons, BTS and their attorneys, David Black and Roy Ewart. In this appeal, BTS, the Robinsons, David Black and Roy Ewart contend that the district court erred in (1) refusing to remand the case to state court, (2) dismissing the case on res judicata grounds, and (3) imposing sanctions against them under rule 11.[1]

Before we examine the merits of this appeal, an additional issue must be addressed. On May 8, 1985, we stayed further proceedings in the appeal pending consummation of settlement negotiations which had been ongoing since January 1985. Following a purported settlement, NCR filed a motion to dismiss the appeal. The Robinsons opposed dismissal and claimed that an alleged mutual release growing out of the settlement negotiations was invalid. We subsequently directed the parties to file briefs setting forth their positions on the validity of the mutual release.[2] We now turn to that issue.

## II.

The parties agree that Texas law determines whether the mutual release is valid. Under Texas law a contract may arise before execution of a writing even where the parties contemplate that a for-

1. BTS has subsequently been dismissed from this appeal for want of prosecution pursuant to an order of this court. *See* 5th Cir.Loc.R. 42.3.

2. This court allowed Black and Ewart, who represented the Robinsons during the second suit and settlement negotiations with NCR, to withdraw as counsel for the Robinsons and BTS in this appeal after the possibility of a conflict of interest was raised regarding the settlement of the Robinsons' appeal and the effect of the mutual release. Consequently, the Robinsons filed their reply brief and their brief on the validity of the mutual release, discussed in Part II *infra*, as pro se appellants.

mal writing will be done later. *Garner v. Boyd,* 330 F.Supp. 22, 25 (N.D.Tex.1970), *aff'd,* 447 F.2d 1373 (5th Cir.1971) (per curiam). In order for the later writing to be considered merely a "convenient memorial" of previously agreed upon terms, the parties must agree upon all material considerations and must intend to be bound. *Garner,* 330 F.Supp. at 26. The intent of the parties to make a binding agreement is the ultimate issue. *Hemenway Co., Inc. v. Sequoia Pac. Realco,* 590 S.W.2d 545 (Tex. Civ.App.—San Antonio 1979, writ ref'd n.r. e.).

NCR asserts that a binding settlement agreement was reached on May 2, 1985, when Brian Greig, NCR's counsel, contacted Ewart and indicated acceptance of the Robinsons' settlement offer of March 13, 1985, with some minor changes. Subsequently, a proposed mutual release was drafted by Greig and sent to Black on June 19. NCR also points to Ewart's letter of May 2 to Greig and Ewart's letter of July 1, 1985, to the clerk of the court as evidence that both parties had agreed upon all the material terms and that the later writing was a mere formality. BTS and the Robinsons, however, argue that the settlement negotiations never reached a final settlement. They point to: (1) a letter sent by Greig to Black on August 28, 1985, that stated that the proposed settlement documents were unsatisfactory; (2) the fact that the Robinsons instructed Black and Ewart not to send a proposed second Mutual Release to NCR in October 1985; and (3) a letter that Ewart sent to the clerk of the court on January 6, 1986, informing the clerk that the parties were deadlocked in settlement negotiations as evidence that no "meeting of the minds" had taken place.

In their supplemental brief, Black and Ewart admit that in January 1986 Black told Greig that the Robinsons' prior settlement offer was still open for acceptance. However, after communicating with the Robinsons and BTS, Black allegedly mailed a letter to Greig on or about January 22, 1986,[3] withdrawing the mutual release. On or about January 25, 1986, Greig informed Ewart that the mutual release had already been forwarded to NCR. Black and Ewart contend that the notice of withdrawal of the settlement offer precluded NCR from accepting the Robinsons' offer to settle as set forth in the mutual release.

■ The evidence that appellee NCR points to as indicating an intention to be bound is ambiguous. For example, the May 2 letter from Greig to Black, which in NCR's view represents a settlement agreement between the parties, contains some changes in the terms of the settlement that could be characterized as further negotiations. In his July 1 letter to the clerk of the court, Ewart wrote that the settlement "is *almost completed*" (emphasis added). The other letters that the parties provide in their supplemental briefs are subject to the same varying interpretations. We have carefully examined the evidence that the parties have provided us and we conclude that the parties had never agreed on the terms of the mutual release. Since there was no "meeting of the minds," the mutual release was invalid.[4] Consequently, we proceed to the merits of the controversy.

### III.

■ The Robinsons first assert that the district court erred in refusing to remand the case to the state court because there was a lack of diversity between the parties. The Robinsons are residents of Texas; NCR is a Maryland corporation with its principal place of business in Ohio; and at

---

**3.** A copy of this letter is not contained in the exhibits submitted to the court by the Robinsons, nor was a copy of this letter provided to the court by Black or Ewart.

**4.** Since we conclude that a complete understanding of the settlement issue may be had from the supplementary briefs and material provided us, a remand to the district court is unnecessary. *Cf. Armstrong v. Collier,* 536 F.2d 72, 77 (5th Cir.1976) (remand to district court unnecessary where rule 52(a) is not complied with but record is clear); *see also Gupta v. East Texas State University,* 654 F.2d 411, 415 (5th Cir.1981) (same); *Rothenberg v. Security Management Co., Inc.,* 736 F.2d 1470, 1472 (11th Cir.1984).

the time relevant to this appeal HDC was a Texas corporation. Generally, there must be complete diversity between the parties for a federal district court to have jurisdiction. 28 U.S.C. § 1332(a)(1). Thus, the fact that HDC is a Texas corporation and the Robinsons are citizens of Texas would normally prevent NCR from removing the case to a federal court from a Texas state court. Where, however, the removing party can prove that there is "absolutely no possibility" that the non-diverse defendant will be liable to plaintiff in state court, *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir.1983), *cert. denied*, 464 U.S. 1039, 104 S.Ct. 701, 79 L.Ed.2d 166 (1984), or when there is "no arguably reasonable basis" that state law might impose liability on the non-diverse defendant, *Tedder v. FMC Corp.*, 590 F.2d 115, 117 (5th Cir.1979), removal is allowed without complete diversity. The district court, relying on *Tedder*, held that HDC was not a real party in interest because BTS and the Robinsons could not recover against HDC for breach of the lease and thus removal was proper. We agree.

The Robinsons allege in their complaint that the warranties made by HDC to NCR in the original lease between those two parties also applied to them through their sublease with NCR. As the district court correctly noted, however, there is no privity of contract between a sublessee and original lessor under Texas law. *Zeidman v. Davis*, 342 S.W.2d 555, 558 (Tex.1961).

Furthermore, a provision in the sublease between NCR and the Robinsons released HDC from any liability to the Robinsons.[5] All of the sublease sections that the Robinsons assert show a breach of duty on the part of HDC are unconvincing. The Robinsons first point to section 9 of the sublease, in which, they argue, HDC covenanted to maintain the premises in good repair. Section 9, however, concerns not HDC's but NCR's obligations:

Subject to the obligations of Lessor under Section five (5) of the original lease,[6] *Sublessor*, unless herein specified to the contrary, shall maintain the premises in good repair and tenantable condition during the continuance of this Sublease, except in case of damage arising from acts or negligence of Sublessee or the agents of Sublessee.

(emphasis added). Contrary to the assertions of the Robinsons, section 9 simply does not obligate HDC to maintain or repair the *interior* of the subleased space.

The Robinsons next argue that HDC's right of entry for inspection, repairs, and alterations established a duty on the part of HDC towards the Robinsons. Section 12 of the sublease, however, merely gives HDC the right of reentry; it does not bind HDC to inspect, repair, or alter the subleased premises.[7] Similarly, section 22 of the sublease merely provides that, in the event of a default by sublessee and reentry by sublessor or lessor, the reentering les-

5. Section 6 of the sublease reads in pertinent part:

Lessor (HDC) and Sublessor (NCR) shall not be liable for any damage to property or any injury to persons, sustained by Sublessee (BTS and the Robinsons), its employees or others, caused by conditions or activities on the premises or the ways adjacent thereto. Sublessee shall hold harmless and indemnify Lessor and Sublessor against all claims and costs arising therefrom....

6. Section 5 of the original lease provides:

LESSOR shall make all necessary *exterior repairs*, including but not limited to, the roof, foundation, exterior walls, paved and black-topped areas, gutters and downspouts, including drainage of the same, and those repairs necessary because of structural defects of the building. LESSOR shall pay any and all taxes, levies, licenses, and other charges which may be legally levied, assessed, charged, or imposed on the premises by the State where the premises are located, or any political subdivision thereof, or by the United States of America, or by any governmental [sic] authority having jurisdiction over the premises. (emphasis added).

7. Section 12 of the sublease provides:

Sublessee shall allow Lessor or Sublessor or the agents or employees of either the free access to the premises at all reasonable times for the purpose of inspecting or of making repairs, additions, or alterations to the premises or any property owned by or under the control of either party.

sor or sublessee has the right to remove the sublessee's personal property.[8]

In short, no contractual duty running from HDC to the Robinsons existed. HDC's disclaimer of all responsibility for maintaining and repairing the interior of the subleased space in the original lease was not abrogated but affirmed by the sublease.[9] Since the Robinsons could not recover from HDC under Texas law, the district court properly ruled that the joinder of HDC did not prevent NCR from removing the suit to federal court. *Tedder* 590 F.2d at 116–17.

## IV.

After the district court dismissed HDC because the Robinsons had no cause of action against it, the court held that the claim by the Robinsons in the 1984 suit was identical to the claim made in their 1981 suit against NCR, and dismissed the suit on res judicata grounds. The Robinsons assert that the district court improperly applied res judicata. We disagree.

■ Federal law determines the res judicata effect of a prior federal court judgment. *Sidag Aktiengesellschaft v. Smoked Foods Products Co., Inc.,* 776 F.2d 1270, 1273 (5th Cir.1985). In *Nilsen v. City of Moss Point, Mississippi,* 701 F.2d 556 (5th Cir.1983) (en banc), we established a standard for determining the applicability of res judicata:

> For a prior judgment to bar an action on the basis of res judicata, the parties must be identical in both suits, the prior judgment must have been rendered by a court of competent jurisdiction, there must have been a final judgment on the merits and the same cause of action must be involved in both cases.

**8.** Section 22 of the sublease provides in relevant part:

> Sublessor or Lessor shall have the *right, but not the obligation,* to remove from the premises all personal property located therein belonging to Sublessee.... (emphasis added).

**9.** Section 10 of the original lease provides:

*Id.* at 559 (quoting *Kemp v. Birmingham New Company,* 608 F.2d 1049, 1052 (5th Cir.1979)).

The Robinsons' main contention is that the parties are not the same in both suits since BTS is a plaintiff in the 1984 suit and was not a party to the 1981 suit. The district court, however, held that BTS is the "alter ego" of the Robinsons. In reaching its decision, the court found that Chester Robinson is the majority stockholder, controlling shareholder, and president of BTS. In addition, the court noted that Frances Robinson was an original incorporator of BTS and served on its board of directors and as its secretary-treasurer.

■ A person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with his interests as to be his "virtual representative." *See Aerojet-General Corporation v. Askew,* 511 F.2d 710, 719 (5th Cir.), *cert. denied sub nom., Metropolitan Dade County, Florida v. Aerojet-General Corporation,* 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975). The question whether a party's interests are virtually representative of the interests of a nonparty is one of fact for the court. *Id.* Given the relationship of the Robinsons to BTS, the district court's finding that the Robinsons were the "virtual representatives" of BTS in the prior suit is not clearly erroneous. *See Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518, 528 (1985); Fed.R.Civ.P. 52(a).

The district court also found that the causes of action asserted in the two suits were similar substantively. We apply the transactional test to determine whether two suits involve the same claim such that res judicata applies to bar the second suit.

> LESSEE [NCR] shall make, at its own expense during the term of this lease, all *interior* repairs of the building leased hereby, reasonable wear and tear, and damage by the elements, fire, or other casualty excepted, and shall replace all plate glass damaged during said term unless the damage is caused by fire or structural failure of the building. (emphasis added).

*Southmark Properties v. Charles House Corp.*, 742 F.2d 862, 870–71 (5th Cir.1984); *Nilsen*, 701 F.2d at 559–60 n. 4.[10] Substance, not technicalities, governs the application of this test. *Astron Industrial Associates, Inc. v. Chrysler Motor Corp.*, 405 F.2d 958 (5th Cir.1968); *Ray v. Tennessee Valley Authority*, 677 F.2d 818 (11th Cir.), *cert. denied*, 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 994 (1982).

Under this test res judicata was properly invoked. The Robinsons' 1984 suit is basically the same as the 1981 suit that they tried and lost; in both suits the Robinsons sought to recover for claimed personal injuries, loss of business, and loss of profits arising out of the contamination of the subleased air space by NCR. The same nucleus of facts is involved, and the relief requested in the two suits is identical. Under the transactional approach to res judicata, moreover, the fact that some claims or theories were not adjudicated in the first suit does not preclude a res judicata effect. The fact that these claims or theories *could* have been brought in the 1981 suit is controlling. *See Nilsen*, 701 F.2d at 560. Therefore, the district court properly held that res judicata barred the Robinsons' 1984 suit.

## V.

Finally, the Robinsons, Black, and Ewart assert that the district court erred in awarding attorney's fees to NCR in the amount of $4,246.25 against them as sanctions pursuant to Fed.R.Civ.P. 11. Black signed all the pleadings and papers filed with the court. Although Ewart did not sign any papers filed with the court, he apparently was present at a pretrial conference.[11] Ewart was also involved in the

settlement negotiations. The district court held that the Robinsons, Black and Ewart were jointly and severally liable for the sanctions.

In addition to arguing that the district court erred in awarding sanctions, Ewart argues separately that rule 11 sanctions cannot be imposed on him because of his trivial role in the Robinsons' suit. We agree with Ewart that the sanctions imposed on him raise some unanswered questions about the scope of persons subject to sanctions under rule 11. Consequently, we find it necessary to examine the text, history, and cases under the rule in order to determine whether or not the district court erred in imposing sanctions against the Robinsons, Black and Ewart.

## A.

Rule 11 provides, in part, that:
Every pleading, motion, or other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated.... The signature of an attorney ... constitutes a certificate by him that he has read the pleading, motion, or other paper, that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation....

Fed.R.Civ.P. 11. In reviewing an order imposing sanctions, we must examine the

10. Under the transactional approach, a claim is defined in factual terms instead of by the rights infringed. Consequently, res judicata can apply to a certain factual situation even though that single factual situation could support different legal theories. *See generally* Restatement (Second) of Judgments, § 24 (1982). *Cf. United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) (a single "cause of action" for pendent jurisdiction pur-

poses occurs when state and federal claims "derive from a common nucleus of operative fact").

11. *The extent of Ewart's participation at the pretrial conference is unclear.* There is no record of who was present or of what events occurred at the pretrial conference. At oral argument, the attorneys for both sides agreed that Ewart was present at the pretrial conference but did not participate in any meaningful way.

aspect of the order that is being reviewed. Findings of fact used by the district court to determine that rule 11 has been violated are reviewed under the clearly erroneous standard. *See* Fed.R.Civ.P. 52(a); *City of Bessemer City, N.C.*, 470 U.S. at 573, 105 S.Ct. at 1511, 84 L.Ed.2d at 528 (1985). The legal conclusion of the district court that a particular set of facts constitutes a violation of rule 11 is reviewed de novo.[12] *Accord Zaldivar v. City of Los Angeles*, 780 F.2d 823, 828 (9th Cir.1986). The amount and type of the sanction imposed is examined under the abuse of discretion standard. *Davis v. Veslan Enterprises*, 765 F.2d 494, 500 (5th Cir.1985).[13]

The language of the current rule, which was amended in 1983, is sharply different than its predecessor.[14] Prior to the 1983 amendment, the only proper inquiry was the subjective belief of the attorney at the time the pleading was signed. Sanctions could only be imposed where there was a showing of bad faith. *E.g., Nemeroff v. Abelson*, 620 F.2d 339, 348 (2d Cir.1980). In essence, an honest but incompetent attorney would be immune from rule 11 sanctions. The problems with a subjective test were clear. As one court noted, "there is no position—no matter how absurd—of which an advocate cannot convince him-

**12.** The standard of review we set out here is not inconsistent with our statement in *Davis v. Veslan Enterprises* 765 F.2d 494 (5th Cir.1985), that says "in determining whether the district court erred in imposing such sanctions, this Court's review is limited to determining whether the district court abused its discretion." 765 F.2d at 498. In determining whether factual, dilatory, or bad faith reasons exist which give rise to rule 11 sanctions, the district court is accorded wide discretion because "the district court has tasted the flavor of litigation and is in the best position to make these kinds of determinations." *Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1174–75 (D.C.Cir.1985). However, as we discuss *infra*, rule 11 *requires* that sanctions of some sort be imposed when rule 11 is violated. "A court does not have discretion as it would under Fed. R.Civ.P. 37, 28 U.S.C. § 1927, or its inherent powers to conclude that sanctions are unwarranted and to deny them." Nelken, *Sanctions Under Amended Federal Rule 11—Some "Chilling" Problems in the Struggle Between Compensation and Punishment*, 74 Geo.L.J. 1313, 1321 (1986) (footnote omitted). Thus, the decision whether a document is legally sufficient involves a question of law and is subject to de novo review. *See Westmoreland*, 770 F.2d at 1175; *see also Albright v. Upjohn Co.*, 788 F.2d 1217, 1221–22 (6th Cir.1986); *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 n. 7 (2d Cir.1985). The rule 11 cases that have been decided in this circuit are consistent with our analysis.

Abuse of discretion may invoke a broad spectrum of review standards and applications. As Judge Friendly has indicated,

[t]here are half a dozen different definitions of "abuse of discretion" ranging from ones that would require the appellate court to come close to finding that the trial court had taken leave of its senses to others which differ from the definition of error by only the slightest nuance, with numerous variations between the extremes.

Friendly, *Indiscretion About Discretion*, 31 Emory L.J. 747, 763 (1982). *See also Metlyn Realty Corp. v. Esmark, Inc.*, 763 F.2d 826, 830–32 (7th Cir.1985); *United States v. Criden*, 648 F.2d 814, 817 (3d Cir.1981). We believe our statement in *Veslan Enterprises* was speaking in general terms of our standard of review and that it encompasses the more refined analysis we set forth above. The standard we set forth today builds upon *Veslan Enterprises* and makes clear that our standard of review is consistent with that used by several other circuits.

**13.** The abuse of discretion standard for reviewing the amount and type of sanctions imposed is also used in several other circuits. *See, e.g., Stevens v. Lawyers Mutual Liability Insurance Co. of North Carolina*, 789 F.2d 1056, 1060 (4th Cir.1986); *Albright v. Upjohn Co.*, 788 F.2d 1217, 1221–22 (6th Cir.1986); *Zalvidar v. City of Los Angeles*, 780 F.2d 823, 828 (9th Cir.1986); *Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1175 (D.C. Cir.1985); *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 n. 7 (2d Cir.1985); *Suslick v. Rothschild Securities Corp.*, 741 F.2d 1000, 1006 (7th Cir.1984).

**14.** Before the 1983 amendment, rule 11 provided in relevant part that:

The signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information and belief there is good ground to support it; and that it is not interposed for delay.... For a wilful violation of this rule an attorney may be subjected to appropriate disciplinary action.

For a general discussion of the revised rule 11, see Symposium, *Amended Rule 11 of the Federal Rules of Civil Procedure*, 54 Fordham L.Rev. 1, 1–33 (1985); Rothschild, Fenton & Swanson, *Rule 11: Stop, Think and Investigate*, Litigation, Winter 1985, at 13.

self." *Wells v. Oppenheimer & Co., Inc.,* 101 F.R.D. 358, 359 n. 3 (S.D.N.Y.1984), *vacated on other grounds,* 106 F.R.D. 258 (S.D.N.Y.1985).

The revised rule 11 changes the standard used to test a pleading for frivolousness. The Advisory Committee Note to Rule 11, 97 F.R.D. 165 (1983), makes clear that the purpose of the revised version of rule 11 is to expand the reach of the former rule and to place a more stringent duty on attorneys. The Note points out that the revised language of rule 11 is "intended to reduce the reluctance of courts to impose sanctions ... *by emphasizing the responsibilities of the attorney.*" 97 F.R.D. at 198. (emphasis added). The comment also notes that while the standard of whether an attorney has made a sufficient inquiry into the facts and law "is one of reasonableness under the circumstances," the revised rule 11 standard "is more stringent than the original good-faith formula and thus ... a greater range of circumstances will trigger its violation." *Id.* at 198–99. Thus, we have held, consistent with the view of most other circuits, that the revised rule 11 imposes an objective, rather than subjective, standard of reasonableness. *Veslan Enterprises,* 765 F.2d at 494. *See also Stevens,* 789 F.2d at 1060; *Zaldivar,* 780 F.2d at 829; *Eastway,* 762 F.2d at 253–54. *But see Nelson v. Piedmont Aviation, Inc.,* 750 F.2d 1234, 1238 (4th Cir.1984), *cert. denied,* 471 U.S. 1116, 105 S.Ct. 2358, 86 L.Ed.2d 259 (1985); *Suslick,* 741 F.2d at 1001 (continuing to analyze rule 11 violations under a bad faith standard).[15] An attorney's good faith is no longer enough to protect him from rule 11 sanctions.

Rule 11 applies to the filing of a "pleading, motion, and other paper" in a civil action. The affirmative duty on an attorney to conduct a "reasonable inquiry" into both the factual and legal basis of any document[16] before signing it does not mean that an attorney must be correct in his view of the law. As the Ninth Circuit recently noted, a reasonable inquiry is "that amount of examination into the facts and legal research which is reasonable under the circumstances of the case. Of course, the conclusion drawn from the research undertaken must itself be defensible. Extended research alone will not save a claim that is without legal or factual merit from the penalty of sanctions." *Zaldivar,* 780 F.2d at 830. An attorney's signature represents that this inquiry has been performed. Furthermore, attorneys must realize that the inquiry required by rule 11 is not a one time only obligation. Counsel have a continuing obligation to review and reevaluate their position as the case develops. *Southern Leasing Partners v. McMullan,* 801 F.2d 783, 788 (5th Cir.1986); *Woodfork v. Gavin,* 105 F.R.D. 100, 104 (N.D.Miss.1985). Thus, a document that initially satisfies the requirements of rule 11 may later turn out to be the basis for rule 11 sanctions as new facts are discovered which show that there is no longer a good faith basis for the document. Upon discovering that a good faith basis no longer exists, it is incumbent upon the appropriate counsel and party to take necessary actions to ensure that the proceedings do not continue without a reasonable basis in law and fact.[17]

---

**15.** The validity of the *Suslick* holding is in doubt. It appears that *Suslick* in fact dealt with the pre–1983 version of rule 11. *Frazier v. Cast,* 771 F.2d 259, 265 n. 4 (7th Cir.1985). The potential for confusion was apparently created because the *Suslick* court quoted the 1983 version of rule 11 when it intended to quote the older version of the rule. *See In Re Ronco, Inc.,* 105 F.R.D. 493, 497 (N.D.Ill.1985). *See also Rodgers v. Lincoln Towing Service, Inc.,* 771 F.2d 194, 205 (7th Cir.1985) (applying objective standard).

We also view *Nelson* as an anomaly in its reliance on a bad faith standard, particularly in

light of the Fourth Circuit's more recent holding in *Stevens.*

**16.** We use the term "document" throughout this opinion as a standard term that encompasses all the filings covered by rule 11.

**17.** For example, in some cases it may be necessary for a party to make a motion to withdraw a prior motion when additional legal research comes to light which undermines the basis for the prior motion. The actions that need to be taken when this occurs necessarily depend on the circumstances of each case.

If a party is represented, the required signature must be that of an attorney, not a firm, who is one of the attorneys of record for the party. Furthermore, a party appearing pro se must sign the documents he files; the rule gives the same effect to his signature as to that of an attorney. The purpose of the signature is to allow a court to easily identify the person or people upon whom it can place responsibility for a particular document.

The Advisory Committee Note makes it clear that rule 11 sanctions can also be imposed on the client that the attorney who signed the document represents. It is unclear, however, whether rule 11 sanctions can only be imposed on the attorney who actually signs a document, or whether sanctions can also be imposed on an attorney who did not sign the document deemed to violate rule 11 but who made an appearance in the suit. This appears to be a matter of first impression for this or any other circuit.

The Advisory Committee Note states that:

> If the duty imposed by the rule is violated, the court should have the discretion to impose sanctions on either the attorney, the party the signing attorney represents, or both, or on an unrepresented party who signed the pleading, and the new rule so provides.

97 F.R.D. at 200. The Note also states that "Rule 11 has provided for the striking of pleadings and the imposition of disciplinary sanctions to check abuses in the *signing* of pleadings" and that "[a]mended Rule 11 continues to apply to anyone who *signs* a pleading, motion, or other paper." 97 F.R.D. at 199 (emphasis added). Indeed, the text of the rule itself speaks in terms of signing both in making it a requirement to prevent a document from being stricken and in the corresponding representations associated with the signature. Furthermore, in almost all of the cases that we have found where an attorney was sanctioned under the revised version of rule 11, it appears that the attorney who was sanctioned had signed the documents in ques-

tion. *See, e.g., Veslan Enterprises, supra, Southern Leasing Partners, supra, Westmoreland, supra.*

Our research has found only one case where it is not clear whether the attorney who had sanctions imposed upon him had also signed the document in question. In *Pravic v. U.S. Industries-Clearing,* 109 F.R.D. 620 (E.D.Mich.1986), the court imposed sanctions upon an attorney who represented a corporation which had removed a case to federal court following involuntary dismissal of a nonresident defendant. The court, finding that the law on removal was well settled contrary to the corporation's position and that the attorney had not made the reasonable inquiry required by rule 11, imposed sanctions upon the attorney. In doing so, the court held that the attorney did not satisfy the "reasonable inquiry" standard by relying on a memorandum of law prepared by another law firm. *Id.* at 623. It is unclear from the opinion, however, whether the sanctioned attorney signed the removal motion, or whether another attorney did. The court relied on an "analogous" situation in *Long v. Quantex Resources, Inc.,* 108 F.R.D. 416 (S.D.N.Y.1985), where the court noted that local counsel had "relied on foreign counsel before *signing* papers and representing them to the court." *Pravic,* 109 F.R.D. at 623 (emphasis added). In discussing the case before it, in contrast, the *Pravic* court held that "an attorney may not rely on a legal memorandum prepared by a second lawyer without independently verifying the reasoning of the cases cited...." *Id.* Thus, it is possible that the *Pravic* court thought that an attorney does not need to sign a document in order to have rule 11 sanctions imposed upon him.

Regardless of this possible ambiguity in *Pravic,* we believe that the text of the rule, the Advisory Committee Note, and the cases decided under rule 11 make it clear that an attorney must actually sign a "pleading, motion, [or] other paper" in order to have sanctions imposed against him

under rule 11.[18] The only other support we have found for the opposite view comes from a thorough article that Judge Schwarzer has written on the revised version of rule 11. Schwarzer, *Sanctions Under the New Rule 11—A Closer Look*, 104 F.R.D. 181 (1985) (hereinafter cited as *Sanctions*). In his article Judge Schwarzer gives two examples that suggest that an attorney need not have signed a document to have sanctions imposed upon him. In one example he suggests that in a situation where an associate in a law firm charged with preparing a document for filing is carrying out the instructions of a partner who made the decision to file it, sanctions are more appropriately imposed on the partner rather than the associate who carried out orders and signed the document. *Sanctions*, 104 F.R.D. at 185. In his second example Judge Schwarzer deals with a case where a document is signed and filed by local counsel at the direction of out-of-state counsel. Judge Schwarzer appears to believe that while local counsel would have primary responsibility for the document, sanctions could also be imposed upon the out-of-state counsel. *Id.* at 186.

To the extent that Judge Schwarzer suggests that an attorney who does not sign a document can be sanctioned under rule 11, we must respectfully disagree. Although his view is arguably consistent with the purpose of rule 11, the text of the rule and the Advisory Committee Note indicate that the attorney whose signature the document bears has the full responsibility for it. While the potential problems that Judge Schwarzer raises in his examples are realistic, there are alternative solutions to these problems other than judicially expanding the scope of rule 11 beyond its express terms. Instead, counsel should be selective in the documents that they sign. Where responsibility for a suit is divided among several law firms or attorneys, counsel would be well advised to make sure that the attorney responsible for the contents of the document is the one who signs it. Alternatively, counsel may have several attorneys sign a document so that it is clear to the court exactly who is taking responsibility for it.

Our view that an attorney must sign a document in order to have rule 11 sanctions imposed upon him is also consistent with the rule's concern about satellite proceedings. The Advisory Committee Note states that:

> To assure that the efficiencies achieved through more effective operation of the pleading regimen will not be offset by the cost of satellite litigation over the imposition of sanctions, the court must to the extent possible limit the scope of sanction proceedings *to the record.* Thus, discovery should be conducted only by leave of the court, and then only in extraordinary circumstances.

97 F.R.D. at 201 (emphasis added). Limiting rule 11 sanctions to the attorney who signs the document reduces the need for satellite litigation over exactly who was responsible for a particular document. If this view of rule 11 were not adopted, an inquiry would have to be made of the relative culpability of attorneys who did not sign but who were nevertheless involved with a particular document. This would necessitate the type of satellite litigation that rule 11 expressly discourages.

 The instant suit provides another example where separate proceedings would be necessary to determine the relative cul-

---

18. We agree, however, with the holding in *Pravic* that reliance on another attorney's work does not preclude *per se* the imposition of sanctions under rule 11. The Advisory Committee Note makes clear that this is one factor that a district court should consider in deciding whether rule 11 has been violated. 97 F.R.D. at 199. The Note lists four factors that the district court should consider: how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the pleading, motion, or other paper; whether the pleading, motion, or other paper was based on a plausible view of the law; and whether he depended on forwarding counsel or another member of the bar. We agree that district courts should take the four factors listed in the Advisory Committee Note into account in ruling on rule 11 motions; no one single factor, however, is determinative as to whether rule 11 has been violated.

pability of Ewart. As we have indicated, Ewart was present only at a pretrial conference, which was not transcribed. In order to effectively review this sanction order as to Ewart, the district court would have to hold an on the record hearing which would make clear the extent of Ewart's involvement in the suit. We believe that requiring such a proceeding would be contrary to the intent of the drafters of rule 11. Thus, we hold that rule 11 sanctions can be imposed only on the attorneys who sign a document, or on the clients that the signing attorneys represent.[19]

An additional issue concerning rule 11 must be discussed. Rule 11 is addressed to two separate problems: first, the problem of frivolous filings; and second, the problem of misusing judicial procedures as a weapon for personal or economic harassment. In its opinion the district court rested its sanctions on the ground that the Robinsons' argument "was not well grounded in fact and ... warranted by existing law or a good faith argument for an extension of that law." The terms of rule 11 state that the signature of an attorney acts as a certificate that the motion "is warranted by existing law or a good faith argument for the extension ... of existing law *and* that it is not interposed for any improper purpose." Fed.R.Civ.P. 11 (emphasis added). In *Veslan Enterprises* we specifically reserved the question of whether violation of one of these two clauses is sufficient for a district court to impose sanctions. *Veslan Enterprises*, 765 F.2d at 500 n. 10. Since the district court specifically rested its sanctions on only the first clause—that the Robinsons' argument was

not warranted by existing law or a good faith argument for its extension—we must resolve this question.

■ We hold that violation of only one of the two clauses in rule 11 is sufficient for a district court to impose sanctions. By signing a document, we believe that an attorney certifies that *both* of the representations contained in rule 11 are satisfied. The two clauses state independent obligations, each of which must be satisfied. While we recognize that there is overlap between the two parts of rule 11, our approach also allows the unique purposes behind each clause to be implemented. For example, it is entirely plausible that the filing of successive motions, each of which is individually well founded in fact and law, could under various circumstances constitute an improper purpose under rule 11 such as harassment or delay. Furthermore, our approach is consistent with the cases and commentary on the revised rule 11. *See, e.g., Eastway*, 762 F.2d at 254; *WSB Electric Co. v. Rank & File Committee to Stop the 2–Gate System*, 103 F.R.D. 417, 420 (N.D.Cal.1984) (Schwarzer, J.); *Sanctions* at 185–96 (noting the different purposes behind the two clauses).[20]

Finally, we note that rule 11 says that "[i]f a ... paper is signed in violation, the court ... *shall* impose ... an appropriate sanction." Fed.R.Civ.P. 11 (emphasis added). By employing the word "shall" the drafters intended to stress the mandatory imposition of sanctions when the requirements of rule 11 have been violated. Thus, where a district court finds that a party's or signing attorney's conduct is improper or unreasonable under rule 11, the court is required to fashion an appropriate sanc-

---

**19.** We do not think that our view that rule 11 sanctions are limited to the attorney who actually signs a document, or to the client he represents, will unduly hamper the ability of a district court to impose sanctions where justified. Rule 11 is only one of many grounds upon which a district court can impose sanctions when necessary. *See, e.g.,* 28 U.S.C. § 1927, Fed.R.Civ.P. 37 (discovery sanctions). *See generally* J. Johnson & G. Cassady, *Frivolous Lawsuits and Defensive Responses to Them—What Relief is Available?*, 36 Ala.L.Rev. 927 (1985).

**20.** In *Zaldivar* the court explicitly reserved the question whether the filing of successive motions could constitute harassment under rule 11 or be sanctionable under some other provision of law. *Zaldivar*, 780 F.2d at 832 n. 10. The court concluded, however, that if an *initial* complaint in a suit satisfies the "well-grounded in fact and warranted by ... law" clause of rule 11, the complaint by itself cannot constitute harassment under the rule. We agree with this statement.

tion. *Accord Unioil v. E.F. Hutton & Co., Inc.,* 802 F.2d 1080, 1091 (9th Cir.1986); *Albright v. Upjohn Co.,* 788 F.2d 1217, 1221–22 (6th Cir.1986); *Zaldivar,* 780 F.2d at 831; *Westmoreland v. CBS Inc.,* 770 F.2d 1168, 1174–75 (D.C.Cir.1985); *Eastway,* 762 F.2d at 254 n. 7; *Advo System, Inc. v. Walters,* 110 F.R.D. 426, 430 (E.D. Mich.1986).

We acknowledge that sanctions should not be lightly imposed given the impact that they may have on both the attorney's and party's reputations. *Golden Eagle Distributing Corp. v. Burroughs Corp.,* 801 F.2d 1531, 1540 (9th Cir.1986); *Gilmer v. City of Cleveland,* 617 F.Supp. 985, 988 (N.D.Ohio 1985). Rule 11 is "not intended to chill an attorney's enthusiasm or creativity." 97 F.R.D. at 199. Nor is it meant to make lawyers strictly liable if a court rules against them on the merits. However, while enthusiasm and innovation in advocacy are to be encouraged, an attorney is under the correlative obligation to conduct himself in a manner consistent with the proper functioning of the judicial system. *See Sanctions* at 184. A person cannot proceed with impunity when his argument has no merit.

### B.

█ Now that we have set out the appropriate standards to be used in reviewing rule 11 sanctions, we review the sanctions imposed on the Robinsons, Black and Ewart in this case.

### 1.

We affirm the sanctions imposed upon the Robinsons and Black. Black signed all the pleadings and papers filed on behalf of the Robinsons. As our discussion above makes clear, the attorney who signs the pleading and/or the client he represents are the appropriate people to sanction if rule 11 is violated. The district court noted in its opinion that Black was fully aware of the 1981 suit that the Robinsons had filed against NCR. Furthermore, NCR's counsel made several attempts to inform Black of the substance of the 1981 suit. Black

was also given an opportunity to withdraw the suit but did not do so. We accept these findings of fact as they are not clearly erroneous. As we have noted, the district court imposed sanctions because it felt that Black's argument was not well grounded in fact and law. We agree with the district court that Black's conduct violated rule 11. The law is clear that res judicata bars all claims that were or might have been asserted by the parties to the prior action. In the 1981 suit the Robinsons sued NCR and lost. In the instant suit the Robinsons sued NCR again on the basis of the identical factual situation despite their defeat in the earlier suit.

A "reasonable inquiry" by Black would have made it obvious that res judicata barred the instant suit against NCR by the Robinsons. The fact that HDC was named as an additional defendant and BTS was named as an additional plaintiff in the instant suit is irrelevant; res judicata clearly precluded the Robinsons' second suit against NCR. Black's persistence in litigating the Robinsons' claim against NCR when res judicata clearly barred the suit violated rule 11. *See also McLaughlin v. Bradlee,* 602 F.Supp. 1412, 1417 (D.D.C. 1985) (noting that sanctions are "especially appropriate" in these situations). Furthermore, the district court acted within its discretion in holding the Robinsons jointly liable for the sanctions imposed under rule 11.

### 2.

The sanctions against Ewart, however, must be reversed. As our discussion above indicates, an attorney must sign a document in the case before rule 11 sanctions can be imposed against him. Ewart did not sign any document involved in the suit. His only role in the course of the proceedings was that he was present at a pretrial conference. *See* n. 11 *supra.* Nevertheless, NCR argues that the sanctions against Ewart should be upheld because Ewart's name was on the original petition filed in state court, though he did not sign it, and also because Ewart was actively

involved in the settlement negotiations between the parties after the district court handed down its decision.

We disagree with both of NCR's reasons. First, the only mention of Ewart's name on the original petition in state court, or on any of the papers filed in the suit, is that the law firm's name, Black & Ewart, is mentioned.[21] Rule 11 requires a pleading, motion, or paper to be signed by at least one attorney "in his *individual* name." Fed.R.Civ.P. 11 (emphasis added). Thus, it is the attorney who signs the document, not the firm to which that attorney belongs, that certifies that the document conforms to the requirements of the rule and accepts the responsibility if it does not. Black's signature indicates that he, not everyone at Black & Ewart, is responsible for the pleadings he signed.

Second, the fact that Ewart was involved in the settlement negotiations does not necessarily mean that he was effectively involved in the litigation in the district court. It is Ewart's conduct before the district court imposed sanctions, not his conduct afterward, that is relevant in determining whether he violated rule 11. The public policy in favor of negotiated settlements would be jeopardized if the conduct of parties during settlement negotiation proceedings could form the basis for judicial sanctions. *Cf.* Fed.R.Evid. 408 (evidence of offers to compromise is not admissible to prove liability in order to encourage settlement negotiations). Consequently, Ewart's involvement in the settlement negotiations is not relevant in determining whether or not he violated rule 11. Since Ewart did not sign any documents involved in the proceedings of the case, the district court erred in imposing rule 11 sanctions on him.

## VI.

The rule 11 sanctions imposed upon Ewart are REVERSED; in all other re-

spects, the judgment of the district court is AFFIRMED.[22] We REMAND the case to the district court for the sole purpose of entering an amended order consistent with this opinion.

AFFIRMED in part, REVERSED in part, and REMANDED.

---

**21.** For example, the original petition in state court was signed—

> Respectfully submitted,
> Black & Ewart
> By /s/ David B. Black

**22.** We do not disturb the amount of the sanctions imposed by the district court about which there is no argument on appeal. However, only Black and the Robinsons will be jointly and severally liable for the sanctions. On remand, an amended order to that effect should be entered by the district court.