**SOUTHERN LEASING PARTNERS, LTD. and Michael Savage, Plaintiffs-Appellants,**

v.

**Paul W. McMULLAN, Thomas A. Murphy, Luther R. Boyd, William Pittman, First Mississippi National Bank, and Continental Leasing Company, Defendants-Appellees.**

No. 86–4206.

United States Court of Appeals, Fifth Circuit.

Oct. 8, 1986.

---

*Williams-McWilliams Co., Inc.*, 628 F.2d 509, 512 (5th Cir.1980).

Nicholas Van Wiser, William Lee Guice, III, Biloxi, Miss., for plaintiffs-appellants.

Michael Freidlander, Stephen P. Murphy, Washington, D.C., Fred Mannino, Biloxi, Miss., for McMullan, Murphy, Boyd, Pittman, First Miss. Continental.

Kenneth L. Swartout, Biloxi, Miss., for Phillips.

Before ALVIN B. RUBIN, RANDALL and PATRICK E. HIGGINBOTHAM, Circuit Judges.

## OPINION

PER CURIAM:

This is an appeal from a District Court order imposing sanctions against the plaintiff, Southern Leasing Partners, Ltd., and plaintiff's counsel, pursuant to Federal Rules of Civil Procedure Rule 11 and 28 U.S.C. § 1927. The district court found that the actions of Southern Leasing and its attorneys were not reasonable under the circumstances and that they pursued claims which were not well grounded in fact or warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law. We are persuaded that the district court did not abuse its discretion in imposing sanctions against Southern Leasing and its attorneys, and affirm.

I

A

On December 1, 1977, Southern Leasing purchased the M/V King's Challenger, an ocean-going tugboat, for $2,400,000.00. Southern Leasing paid $480,000.00 of the purchase price in cash, and granted a promissory note to First Mississippi National Bank in the amount of the balance, secured by a first preferred ship's mortgage on the vessel.

First Mississippi later seized the vessel from International Marine Towing, Southern Leasing's charterer under a bareboat charter party agreement, and instituted an *in rem* action against the vessel in the United States District Court for the Middle District of Florida, Jacksonville Division, for foreclosure of First Mississippi's first preferred ship's mortgage. In its answer, Southern Leasing denied liability under the mortgage and asserted counterclaims against First Mississippi, alleging that First Mississippi fraudulently induced Southern Leasing to purchase the vessel

and that First Mississippi had committed federal and state securities violations.

Before trial, Southern Leasing and First Mississippi reached a settlement of all claims between the parties and entered into a stipulation of dismissal whereby Southern Leasing's counterclaims were dismissed with prejudice and First Mississippi's claims were dismissed without prejudice. The agreement released First Mississippi, its officers, directors, and employees "from all rights, claims and actions" which Southern Leasing had against First Mississippi "from the beginning of the world to the date of execution of the [agreement]." The agreement also required Southern Leasing to use its best efforts to acquire another charterer, and provided for First Mississippi to pay Southern Leasing $700,000.00 pursuant to a non-negotiable, conditional letter of credit if Southern Leasing was unable to do so.

When Southern Leasing failed to locate a charterer or make payments to First Mississippi on its mortgage as required by the settlement agreement, First Mississippi filed a second *in rem* action against the vessel to foreclose its first preferred ship's mortgage. First Mississippi also claimed damages for Southern Leasing's failure to maintain and preserve the vessel. Southern Leasing denied liability under the original promissory note and asserted counterclaims, alleging that Southern Leasing had complied with the terms of the letter of credit, that First Mississippi had wrongfully dishonored the letter of credit, and that First Mississippi had fraudulently induced Southern Leasing to enter into the settlement agreement. First Mississippi responded by challenging Southern Leasing's efforts in locating a charterer, and by counterclaiming against Southern Leasing, alleging fraud and breach of contract under the settlement agreement.

Following a two-week trial, a final judgment was entered in favor of First Mississippi, and Southern Leasing's counterclaims against First Mississippi were dismissed with prejudice. The court found that Southern Leasing had breached the settlement agreement by failing to use its best efforts to secure another charterer and had failed to maintain and preserve the vessel. The court condemned the vessel for sale for payment of First Mississippi's judgment.

First Mississippi bought the vessel at foreclosure for approximately $800,000.00. Southern Leasing challenged confirmation of the sale, alleging a gross disparity between the fair market value of the vessel and the price paid. The court confirmed the sale, but agreed to hold an evidentiary hearing to determine the fair market value of the vessel and to use that amount in lieu of the foreclosure value to decrease the amount of the in personam judgment it had rendered against Southern Leasing.

At this hearing, Southern Leasing alleged that First Mississippi had not disclosed all bids received for the vessel prior to its sale. First Mississippi, in response, introduced all offers received for the vessel—none of which were received prior to the sale. The court, without specifically addressing when and what bids First Mississippi received for the vessel, found that the market value of the vessel was $1.6 million and reduced the in personam judgment accordingly.

Southern Leasing appealed. The court of appeals affirmed all aspects of the district court's judgment except that portion imposing personal liability on Southern Leasing due to the nonrecourse nature of the promissory note. The case was remanded, however, to the District Court for a hearing on the deterioration in the value of the vessel. Before this hearing, Southern Leasing and First Mississippi entered into a consent judgment whereby Southern Leasing agreed that the vessel's value had deteriorated by $100,000.00 as a result of Southern Leasing's failure to maintain the vessel.

## B

Following the entry of that consent judgment, Southern Leasing learned that the vessel had been transferred from First Mississippi to First Continental Leasing Corpo-

ration and then from First Continental to Hannah Brothers on July 24, 1981. The abstract of title from the United States Coast Guard indicated that a first preferred ship's mortgage was given by Hannah Brothers to First Mississippi in the amount of $2.8 million. This abstract, recorded on July 24, 1981, before the consent judgment was entered, was not discovered by Southern Leasing until August 24, 1984.

On August 29, 1984, Southern Leasing contacted the law firm it eventually hired regarding the possibility of bringing yet another claim against First Mississippi. The next day, attorneys from this firm met with Michael Savage on behalf of Southern Leasing for approximately three hours. The firm continued "factual investigation" of this matter during the months of September and October in attempting to determine whether they would represent Southern Leasing. The firm decided to accept the case in the latter part of November 1984.

During the three months preceding the filing of the Complaint, the law firm spent approximately 22.6 billable hours in factual investigation and approximately 29.2 billable hours in legal research. Of this time, approximately two days were devoted solely to discussions with the client. Three lawyers participated in these discussions, leaving little, if any, of these 22.6 hours for further factual investigation. Indeed, the only "factual investigation" alleged consists of such personal interviews with the client.

There is evidence that counsel failed to review or consider much of the district or appellate court proceedings in the prior cases between the parties.[1] There is no indication that counsel reviewed or considered the opinions or orders issued therein, or the briefs filed or deposition or trial testimony given in such proceedings. Moreover, there is no indication that counsel discussed any of the facts or legal issues with Southern Leasing's counsel in these prior cases.

Counsel, having delayed investigation on the matter for almost three months after being contacted by Southern Leasing, learned of a potential statute of limitations problem and chose simply to rely on its client in filing the Complaint. In fact, counsel did not even draft the Complaint, but rather utilized, for the most part, a proposed Complaint drafted by Southern Leasing's California counsel.

This Complaint stated seven claims[2] against First Mississippi, several of its current or former employees, and five other totally unrelated persons. Four of the defendants were never served, because counsel were persuaded before filing that personal jurisdiction over these defendants could not be obtained. With regards to another defendant, James Phillips, the Complaint alleged only that he was a resident of the State of Mississippi. Pressured by the impending limitations deadline, Counsel filed the Complaint hoping that discovery would uncover facts to support its claims.

First Mississippi and its affiliated co-defendants moved to dismiss the complaint urging that the complaint was barred by res judicata, collateral estoppel, and applicable federal and state statute of limitations; failed to state a claim upon which relief could be granted; failed to state, with the requisite particularity, the circumstances constituting fraud; and was a

---

1. Counsel reviewed only the documents regarding the second foreclosure proceeding.

2. The first merely repeated the counterclaim to First Mississippi's first foreclosure, namely that First Mississippi fraudulently induced SLP to purchase the vessel. The second alleges that such conduct constitutes a "continuing fraud" which commenced prior to SLP's purchase of the vessel and continued through First Mississippi's purchase at the foreclosure sale. SLP's third cause of action seeks cancellation of the

prior settlement agreement regarding the first foreclosure action; the fourth alleges contractual interference with SLP's charter agreement with International Marine by First Mississippi. The fifth cause of action asserts First Mississippi breached the prior settlement agreement (a claim previously seen and litigated in the second foreclosure proceeding). The sixth alleges a RICO violation, and the seventh alleges a "prima facie" tort.

sham. This motion also requested sanctions pursuant to Federal Rules of Civil Procedure Rule 11 and 28 U.S.C. § 1927.

The district court dismissed the Complaint on January 13, 1986, with prejudice as to First Mississippi, First Continental, McMullan, Murphy, Boyd, and Pittman pursuant to Federal Rules of Civil Procedure Rule 56, stating:

> It appears to the Court that [Southern Leasing's] "scattergun" Complaint may be a frivolous and vexatious attempt to relitigate issues foreclosed by valid judgments. The Complaint contains no apparent claim for damages against Defendants other than [First Mississippi] and it appears that Defendants other than [First Mississippi] may have been joined for improper reasons. The Court questions whether [Southern Leasing] and/or its attorneys could believe that the instant Complaint is "well grounded in fact" and "warranted by existing law" after "reasonable inquiry."

The claims stated against Phillips were dismissed without prejudice pursuant to Federal Rules of Civil Procedure Rule 8, as the allegations against Phillips did not satisfy even the liberal notice pleading requirement therein.

The district court reserved judgment on First Mississippi's motion for sanctions until after a show cause hearing. The district court also ordered Southern Leasing to show cause why the defendants who had never been served should not be dismissed pursuant to Rule 4(j) of the Federal Rules of Civil Procedure.

After the show cause hearing, the district court dismissed the unserved Defendants and imposed sanctions against Southern Leasing and its attorneys, jointly and severally, as follows:

> (1) [Southern Leasing] and its attorneys are ordered to pay $5,000.00 to [First Mississippi] on or before April 1, 1986;

> (2) [Southern Leasing] and its attorneys are ordered to pay $600.00 to Phillips on or before April 1, 1986; and

> (3) [Southern Leasing] and its attorneys are ordered to pay $1755.00 to Kenneth L. Swarthout on or before April 1, 1986.

The sanctions were imposed by the district court only after it considered the briefs, affidavits, and oral arguments submitted by the parties on the issue of sanctions. The court specifically found that counsel's equitable argument that res judicata should not apply was not warranted by existing law or a good faith argument for extension, modification, or reversal of existing law.

## II

We are asked to reconsider whether the District Court's January 13 dismissal of their Complaint was error as a matter of law.[3] However, on April 8, 1986, Southern Leasing's appeal of the January 13 judgment was dismissed for failure to file a brief pursuant to Local Rule 42.3.2, a dismissal affirmed by a single judge of this court on April 29, 1986 and again by a panel of this court on May 27, 1986.

The law of the case doctrine precludes reconsideration of the legal and factual issues surrounding the January 13 dismissal of Southern Leasing's Complaint. Contrary to Appellants' position, the January 13 decision of the District Court is not before this Court for review.[4] *See Todd Shipyards Corp. v. Auto Transportation S.A.,* 763 F.2d 745 (5th Cir.1985). The only issue before this Court is whether the District Court abused its discretion by its imposition of sanctions.

## III

In reviewing the imposition of sanctions by the District Court pursuant to Rule 11 of the Federal Rules of Civil Procedure, the standard of review is limited to

---

3. In fact, as Appellants themselves state in their brief, "[this] is the basic contention of SLP and Savage in this appeal."

4. The retention of jurisdiction to decide the sanctions did not preclude the issuance of a final, appealable judgment on the merits. *See, Holmes v. J. Ray McDermott and Co., Inc.,* 682 F.2d 1143 (5th Cir.1982).

whether the district court abused its discretion. *Davis v. Veslan Enterprises*, 765 F.2d 494 (5th Cir.1985). Like the district court, we are persuaded that the actions of Southern Leasing and its attorneys were not reasonable under the circumstances and its claims were not warranted by existing law or good faith arguments for extension, modification, or reversal of existing law. The district court did not abuse its discretion.

The signature of Southern Leasing's counsel on the complaint certifies:

> that he ... read the pleading ...; that to the best of his knowledge, information, and belief formed *after reasonable inquiry* it [was] well grounded in fact and [was] warranted by existing law ... and that it [was] not interposed for any improper purposes.

Fed.R.Civ.P. 11 (emphasis added). The district court was warranted on these facts in concluding that counsel's failure to make the reasonable inquiry required by Rule 11 justified sanctions.

Counsel has stressed the necessity of their reliance on the client due to the impending limitations deadline. We are not persuaded. Blind reliance on the client is seldom a sufficient inquiry and certainly not when the prior history of a case at the courthouse may well be dispositive, as here. The rule's requirement of inquiry is a considered response to a perceived problem of baseless claims. We will give the rule its full due. If counsel had made inquiry, if it had taken the time to examine the pleadings, briefs, and records of the previous actions between the parties, it would have discerned as the district court did that:

> [f]actually, the instant Complaint is a "mirror-image" of the counterclaims previously asserted by [Southern Leasing] against [First Mississippi] in the prior foreclosure actions. No "new" facts are brought to light in the instant Complaint. Legally, the Complaint is likewise a close facsimile to [Southern Leasing's] earlier counterclaims with the exception of the scantily-pled "continuing fraud," "prima facie" tort, and civil RICO claims, all of which either were or could have been litigated before the [court] in the prior foreclosure actions.

Failure to do the work of a lawyer cannot be explained away by the approaching limitations bar, as counsel's delay of almost three months in investigating the merits of the case created the problem. Furthermore, counsel neglected its continuing obligation to review, reexamine and reevaluate its position as the facts came to light after the filing of the complaint. *Woodfork v. Gavin*, 105 F.R.D. 100 (N.D.Miss.1985). Despite ample time after the filing of this complaint and its disposition to examine the pleadings, briefs, and records it had consciously neglected before, counsel did not dismiss the complaint. When a lawyer learns that an asserted position, even if originally supported by adequate inquiry, is no longer justifiable he must not persist in its prosecution.

Appellants sued Phillips without knowing how he fit into the picture, apparently hoping that later discovery would uncover something. If Rule 11 is to mean anything and we think it does, it must mean an end to such expeditionary pleadings. "[T]his 'shotgun approach' to pleadings, ... where the pleader heedlessly throws a little bit of everything into his complaint in the hopes that something will stick, is to be discouraged." *Rodgers v. Lincoln Towing Serv., Inc.*, 596 F.Supp. 13, 27 (N.D.Ill.1984), *aff'd*, 771 F.2d 194 (7th Cir.1985). Again, counsel failed to reevaluate the situation after the complaint had been filed, despite several requests by Phillips' counsel for a voluntary dismissal.

Finally, Southern Leasing contends that their equitable argument regarding the doctrine of res judicata is of merit and thereby absolves Counsel and Southern Leasing of liability for sanctions. Basically, Southern Leasing argues that the technical requirements of res judicata were not met in the first instance, and that even if they were, res judicata should not be applied to work an "injustice." They do not support their rhetoric with relevant cita-

tions and misconstrue the law of res judicata. This argument cannot be considered a good faith argument for the extension, modification, or reversal of existing law. As the district court stated below, " '[r]easonable inquiry' into the law of res judicata should have indicated to [Southern Leasing's] attorneys that none of [the exceptions claimed] were applicable...."

Rule 11 is not a rule of strict liability. It imposes a standard of reasonableness measured objectively. *Veslan Enterprises*, 765 F.2d at 494. Counsel's inadequate inquiry into the merits of these claims, both before and after the pleadings were filed, fails to meet the Rule and the district court did not abuse its discretion in sanctioning both Southern Leasing and its attorneys. The law is simple and poses no threat to competent lawyers. Simply put, a lawyer must have a basis for his pleadings.

## IV

Appellees ask not only that this Court affirm the district court's imposition of sanctions, but that this Court also award double costs and attorneys' fees to them under Federal Rules of Appellate Procedure Rule 38 and 28 U.S.C. § 1912. Appellees have also requested sanctions against Southern Leasing and its counsel pursuant to 28 U.S.C. § 1927. The appeal is indeed baseless. Given the sanction below, we confine our sanction to double costs to be paid only by the lawyers.

AFFIRMED.