See also 665 F.Supp. 1283.

**CHAPMAN & COLE, et al., Plaintiff,**

**v.**

**ITEL CONTAINER INTERNATIONAL B.V., et al., Defendant,**

**v.**

**Norman EHRENTRAUT, Third-Party Defendant.**

**Civ. A. No. H–83–5945.**

United States District Court, S.D. Texas, Houston Division.

July 22, 1987.

J. Douglas Sutter, Ross, Griggs & Harrison, Houston, Tex., for plaintiff.

Edward D. Urquhart, Urquhart & Hassell, Houston, Tex., for defendant.

## MEMORANDUM AND ORDER

SINGLETON, Chief Judge.

### INTRODUCTION

The matters currently before this Court are the plaintiffs' and third-party defendant's Motions for Sanctions against Itel Container International (hereinafter "Itel"), and its attorneys, Urquhart & Hassel. This action was tried before this Court during a bench trial that began on April 6, 1987 and lasted seven-days. At the conclusion of the trial, this Court indicated from the bench that sanctions would not be imposed. However, prodded by plaintiff's motion to reconsider, this Court subsequently reviewed the tapes from two pre-trial conferences in this action, as well as the recent Fifth Circuit case law addressing the imposition of sanctions, and determined that a show cause hearing should be conducted to determine whether sanctions should be imposed. Notice was sent to the parties and a hearing was held on May 5, 1987. Having now considered the arguments and testimony presented at the May 5, 1987 Show Cause Hearing, along with all memoranda filed in support of each sides respective positions, this Court makes the following findings from the facts presented in this action.

### DISCUSSION

#### 1. *Preliminary Matters*

As a preliminary matter, this Court must address defendant's contention that third-party defendant, Norman Ehrentraut's post-trial request for sanctions violates the terms of the approved settlement agreement. Defendant's attorneys contend that as part of an approved settlement with Mr. Ehrentraut, Itel agreed to dismiss its third-party complaint in return for which Mr. Ehrentraut agreed to withdraw his motion for sanctions. Mr. Ehrentraut argues, however, that the agreement only applied with reference to his motion against Itel and does not apply to his request for sanctions against Itel's attorney's, Urquhart & Hassell.

To support its contention that Mr. Ehrentraut's request for sanctions amounts to a breach of the approved settlement agreement, Itel's attorneys draw reference to two letters sent by Mr. Ehrentraut's attorney, Fritz Barnett. The letters clearly indicate that Mr. Ehrentraut agreed to drop his motion for sanctions as part of the settlement agreement. Mr. Barnett's post-trial assertion that Mr. Ehrentraut's agreement was only intended to apply with reference to his motion against Itel, and not with reference to his motion against Itel's attorneys, seems slightly contrived. If Mr. Barnett intended to dismiss only a portion of Mr. Ehrentraut's motion for sanctions as part of the agreement, then his correspondence with Itel's attorneys was certainly misleading. In addition, if Itel's attorneys had known that this was Mr. Barnett's intention then it is unlikely that they would have agreed to settle with Mr. Ehrentraut.

Notwithstanding the terms of the settlement agreement with Mr. Ehrentraut, however, this Court has the authority, if not the duty, to impose Rule 11 sanctions against any attorney who fails to make an

objectively reasonable inquiry into the merits of a claim. *See Southern Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783 (5th Cir.1986). In its Note to Rule 11, the Advisory Committee on rules states succinctly the purpose behind the Rule:

> [t]he word "sanctions" in the caption … stresses a deterent orientation in dealing with improper pleadings, motions or other papers.... And the words "shall impose" in the last sentence focus the Court's attention on the need to impose sanctions for pleading and motion abuses. The court, however, retains the necessary flexibility to deal appropriately with violations of the rule. It has discretion to tailor sanctions to the particular facts of the case, with which it should be well acquainted.

As the Fifth Circuit has noted, Rule 11 "is simple and poses no threat to competent lawyers. Simply put, a lawyer must have a basis for his pleadings." *Southern Leasing*, 801 F.2d at 789. The law is abundantly clear: where an attorney does not have an objectively reasonable basis for filing or continuing to urge a pleading before the Court, the Court must impose some type of Rule 11 sanctions. *Robinson v. National Cash Register Co.*, 808 F.2d 1119, 1126 n. 12 (5th Cir.1987).

In addition to the authority granted the Court by the rule itself, the defendant's attorneys are also aware that this Court retained jurisdiction during two pretrial conferences to impose sanctions if the allegations against Mr. Ehrentraut proved to be baseless. In fact, this Courts' exact words during those conferences were that sanctions "would be imposed" if these allegations proved to be false. While this Court must accept the terms of the settlement agreement as it applies to Mr. Ehrentraut's motion against Itel, this Court will not extend that agreement to protect Itel's attorneys. In fact, this Court finds that the "twelfth-hour" settlement with Mr. Ehrentraut on the eve of the trial was nothing more than a ploy used by Itel's attorneys in an effort to avoid sanctions. The justifications given by Urquhart and Hassell for their client's last minute settlement with

Mr. Ehrentraut are unpersuasive and require very little discussion.

Basically, the law firm alleges that it supported Itel's decision to settle because it feared that this Court would grant a continuance which would have had the "potential adverse effects" of unavailability of key Itel witnesses and increased costs of litigation to Itel. *See* Affidavit of Pascal Paul Piazza, May 10, 1987. In addition, the firm questioned whether Itel would be able to collect any judgment it might obtain against Mr. Ehrentraut. *Id.*

The argument that a continuance, which defendant's attorneys had no way of knowing would even be considered by this Court, would have had such a devastating impact on witness availability in a case filed over three years ago is totally unpersuasive. In addition, this Court is knowledgable enough to know that the additional expense that a continuance might have caused would have been trivial when compared to the total costs of this litigation to Itel. Finally, there is nothing to support the claim that Itel's attorneys learned anything in March of 1987 about the status of Mr. Ehrentraut's financial situation that they were not aware of previously. Simply stated, the reasons given by Urquhart & Hassell for the last minute settlement with Mr. Ehrentraut are nothing more than feeble attempts to justify their position. This Court, however, rejects all of the justifications offered by the law firm and finds instead that the real justification for the settlement with Mr. Ehrentraut was to avoid possible sanctions.

This Court wishes to address one additional prefatory argument raised by Itel in its Memorandum of Law Supporting the Denial of Sanctions. Itel's attorneys argue that sanctions should not be imposed because "[t]his Court has recognized the plausibility of Itel's case by denying all previous motions to dismiss, previous motions for summary judgment, and previous motions for sanctions." *See* Memorandum of Law Supporting the Denial of Sanctions Against Itel Container International B.V.

and Itel Container International Corporation and Their Attorneys, May 11, 1987, at 3. This argument is unpersuasive because, as noted earlier, defendant's attorneys were present at the two pretrial conferences when this Court deferred ruling on the issue of sanctions until after the trial. This Court has difficulty understanding how defendant's attorneys could have misconstrued this Court's actions as a show of support for their position. Additionally, defendants' attorneys should be aware that the Fifth Circuit has previously rejected this argument in upholding a district court's award of sanctions. In *Barrios v. Pelham Marine, Inc.,* 796 F.2d 128, 132 (5th Cir.1986), the Court noted:

> Pelham's position on appeal is that its cross-complaint could not have been frivilous or else the district court would have granted Texaco's motion for summary judgment instead of proceeding to trial. Pelham should have been content with only a $750 penalty.... The district court's decision to carry over a motion to trial when the trial preparation has been completed and the trial is ready to begin is hardly sufficient to infuse a vapid claim with life.... We also vacate the district court's award of $750 for sanctions in accordance with Rule 11 so that it might, on remand, consider the possibility of imposing more severe sanctions.

*Id.* at 132–33.

### 2. *The Standard For Imposing Rule 11 Sactions*

The Fifth Circuit recently discussed in-depth the standard to be used when assessing a lawyer's conduct for potential Rule 11 violations. In *Robinson v. National Cash Register Co.,* 808 F.2d 1119 (5th Cir.1987), the Court noted that the revised version of Rule 11 was expanded to place a greater duty on attorneys and to reduce the reluctance of Courts to impose sanctions. *Robinson,* 808 F.2d at 1127. Quoting from the Advisory Committee's Note to the revised version of Rule 11, the Court points out that "the standard of whether an attorney has made a sufficient inquiry into the facts and law is one of reasonableness under the circumstances, the revised Rule 11 standard is more stringent than the original good-faith formula and thus ... a greater range of circumstances will trigger its violation." *Robinson,* 808 F.2d at 1127. Thus, the Court has held that the revised rule imposes an "objective, rather than subjective, standard of reasonableness," and, in the words of the Court, "[a]n attorney's good faith is no longer enough to protect him from Rule 11 sanction." *Id.*

The affirmative duty placed on an attorney by Rule 11 to conduct a "reasonable inquiry" into both the factual and legal basis of any document before signing it, does not end with the filing of the pleading, motion, or other document in court. *Robinson,* 808 F.2d at 1127. The Fifth Circuit has noted that "the inquiry required by Rule 11 is not a one time only obligation." *Id.* Counsel has a continuing obligation to review and reevaluate his position as the case develops. *Id.; see also Southern Leasing,* 801 F.2d at 788. Thus, the Court has concluded:

> [a] document that initially satisfies the requirements of Rule 11 may later turn out to be the basis for Rule 11 sanctions as new facts are discovered which show that there is no longer a good faith basis for the document. Upon discovering that a good faith basis no longer exists, it is incumbent upon the appropriate counsel and party to take necessary actions to ensure that the proceedings do not continue without a reasonable basis in law and fact.

*Robinson,* 808 F.2d at 1127.

### 3. *Findings Regarding the Imposition of Sanctions*

#### A. *The RICO claims*

The May 11, 1987 Show Cause Hearing was held to provide the defendants and their attorneys an opportunity to address the issues set forth in this Court's May 5, 1987 notice of setting. Essentially, this Court ordered the defendants and their attorneys to address three matters of concern to this Court: (1) whether defendants' attorneys had made a sufficient inquiry

into the facts before filing the Rico and Texas Deceptive Trade Practices Act Claims; (2) whether defendants' attorneys failed to withdraw these claims after discovering that there was no longer an objectively reasonable basis for pursuing them; and (3) whether Itel authorized its agent, Allen P. Goldade, to sign a false and misleading affidavit.

Regarding the first two matters, Sylvia Hassell, a partner with the law firm of Urquhart & Hassell, testified during the Show Cause Hearing as to the facts which she considered provided a reasonable basis for filing the Rico cause of action against Mr. Ehrentraut and the Texas Deceptive Trade Practices Act claims against the plaintiffs. The facts are also set forth in an affidavit submitted by Ms. Hassell.

In their Rico claim against Mr. Ehrentraut, defendants' alleged that Mr. Ehrentraut took kickbacks from E.J. Novotny, owner of DanTex Erectors. The defendants' charged that as a result of receiving these kickbacks Mr. Ehrentraut improperly supervised the construction of the Itel facility, specifically, the work done by subcontractors Novotny and Treat.

The initial facts which Ms. Hassell claims supported the decision to bring the Rico Act claims can be summarized rather easily: (1) copies of five cancelled checks from E.J. Novotny and DanTex Erectors made payable to Norman Ehrentraut; (2) statements made by John Montgomery during a taped telephone conversation with Ms. Hassell on June 9, 1983; (3) the defendants' expert's testimony that the construction on the Itel site was substandard; (4) the fact that Mr. Ehrentraut occasionally did work for Mr. Novotny as an independent contractor and was a partner in a company with Mr. Novotny known as DanTex General Contractors; (5) the fact that Mr. Ehrentraut was confronted by Mr. Chapman when he learned about the outside work Mr. Ehrentraut had done for Mr. Novotny; (6) the fact that DanTex Erectors was replaced on the Itel site as building contractor because of their failure to meet construction deadlines; (7) Itel's knowledge that if either Mr. Ehrentraut or Mr. Novotny "admitted to the payment or receipt of such kickbacks they would be admitting to commercial bribery, ...;" and (8) the fact that Mr. Ehrentraut supervised some of the work performed on the Itel site. *See Affidavit of Silvia T. Hassell,* filed May 11, 1987, at 6–18.

Two separate inquiries must be made in determining whether Ms. Hassell violated her Rule 11 duty. The first is whether Ms. Hassell made a sufficient inquiry into the facts before filing the Rico claims. Then, assuming she made a sufficient initial inquiry, the second question is whether she failed to reevaluate the reasonableness of going forward with the Rico claims given the facts later discovered. *See Robinson, supra.*

It is difficult for a Court to evaluate the sufficiency of an attorney's inquiry prior to filing a claim. Such an evaluation requires the Court to, delve into the attorney's initial thought processes. For this reason, it would be unfair to use hindsight as the sole gauge in making such an evaluation. Therefore, in this case the the Court must evaluate Ms. Hassell's actions in light of the Fifth Circuit's adopted standard: Was Ms. Hassell's decision to bring the Rico claims objectively reasonable given the circumstances? *See Robinson, supra.*

Since Rule 11 is not a rule of strict liability, a Court can presumably consider both the circumstances surrounding the filing of the pleading as well as the facts available to the attorney at the time of filing. In this action, however, Ms. Hassell raises no issue concerning the circumstances surrounding the filing of the Rico claims. Therefore, this Court must evaluate Ms. Hassell's decision to file the claim based solely on the facts available to her at the time of filing.

The relevant facts available to Ms. Hassell at the time of filing can be reduced to two; (1) her telephone conversation with Mr. Montgomery, and (2) the discovery of the five checks written by DanTex Erectors and made payable to Mr. Ehrentraut. In evaluating these facts as the basis for fil-

ing the Rico claims, this Court must consider whether Ms. Hassell's investigation into these facts was sufficient to warrant the filing of such counterclaims. Stated differently, the question raised is whether Ms. Hassell's initial inquiry into these facts was that which a reasonably prudent attorney would have objectively made in light of the severity of these allegations.

This Court finds that Ms. Hassell's initial inquiry into the facts surrounding the alleged Rico claims was not objectively reasonable under the circumstances. To begin with, this Court has made an *in camera* review of the transcript and tape of the telephone conversation between Ms. Hassell and Mr. Montgomery. The transcript indicates that during the conversation Mr. Montgomery made it clear that his knowledge of the facts were based on nothing more than sheer speculation. Mr. Montgomery indicated that he had no first-hand knowledge of any kickbacks, and, moreover, he states unequivocally that none of the stories he heard about Mr. Ehrentraut ever involved the Itel project. Simply stated, Ms. Hassell should have been aware that Mr. Montgomery's statements had little, if any, substantive value.

The only solid evidence then of any illegal payments were the five checks from DanTex Erectors. To evaluate the sufficiency of Ms. Hassell's inquiry into these facts one need look no further than the trial transcript. The clear and convincing evidence in this case was that Mr. Ehrentraut legitimately worked for Mr. Novotny as an independent contractor on other Chapman & Cole job sites for the legitimate payments evidenced by these five checks. Therefore, the clear and convincing evidence was that these payments did not involve the Itel facility in any manner. Additionally, Mr. Novotny was not involved with the construction of the flexible surface on the Itel site. Mr. Treat was the only individual who did any work on the flexible surface. During both the trial and the show cause hearing, Ms. Hassell was unable to point to any evidence that would link the payments made to Mr. Ehrentraut to the work performed by Mr. Treat on the

yard's surface. Since there never was any evidence or inferences of any "kickbacks", bribes or other illegal payments associated with the Itel project, this Court must conclude that Ms. Hassell's initial inquiry was either insufficient or that Ms. Hassell was aware that no evidence existed but chose to ignore it. In either case, her decision to bring the Rico claims based on the initial inquiry performed was not objectively reasonable and, therefore, violated Rule 11. *See Robinson, supra.*

However deserving of sanctions Ms. Hassell's decision to bring the Rico claims may have been, her decision to maintain those claims after engaging in further discovery is even more so deserving under the circumstances. Notwithstanding the fact that the evidence indicated that the payments made to Mr. Ehrentraut were for legitimate work, Ms. Hassell and Mr. Urquhart engaged in extensive discovery. Urquhart & Hassell took numerous depositions of all the relevant participants in the alleged conspiracy. Urquhart & Hassell deposed Lester Schalit, Norman Ehrentraut, E.J. Novotny, Brent Warren, J.E. Lewis and John Montgomery. In addition, they deposed Mr. Treat on three separate occasions and Mr. Chapman twice. Although each witness deposed informed Urquhart & Hassell that he had no knowledge of any wrong doing regarding Mr. Ehrentraut or the Itel project, Urquhart & Hassell persevered in their attempt to prove that illegal activity had occurred on the Itel site. In a further attempt to acquire evidence to support the Rico claims, Mr. Schalit testified during the trial that Urquhart & Hassell attempted to intimidate him with threats of lawsuits against him and further accused him of receiving "kickbacks." When given the opportunity to contest these accusations in open court, Urquhart & Hassell chose not to cross-examine Mr. Schalit.

Regarding the reasonableness of Ms. Hassell's decision to rely on the statements made by Mr. Montgomery during the taped conversation, Mr. Montgomery testified that following the conversation Ms. Hassell

sent him an affidavit which she had prepared for his signature. Mr. Montgomery testified that upon receiving the affidavit he "tore it in four pieces and threw it in the waste basket," because in his words "about the only thing really accurate was my name and address and profession." This Court has compared the statements contained in the affidavit with the transcript from the telephone conversation. None of the statements contained in the affidavit prepared by Ms. Hassell, regarding Mr. Montgomery's first-hand knowledge of what transpired at the Itel construction site, could ever have been inferred from any of the statements made during the phone conversation.

Therefore, this Court finds that it was entirely unreasonable for Ms. Hassell to maintain the Rico claims in light of what she learned through her extensive discovery. Furthermore, this Court finds that none of the four "new" facts that Ms. Hassell claims to have discovered after the August 4, 1986 pretrial conference in any way advanced the merits of the Rico claims. *See Affidavit of Silvia T. Hassell,* at 24–25. Thus, it is clear to this Court that Ms. Hassell's decision to maintain the Rico claims was based upon her subjective belief that Mr. Ehrentraut had taken kickbacks. This conclusion is supported by a statement made by Ms. Hassell in her own sworn affidavit:

> 4. The following are the facts that provided the basis for my statement to the Court on August 18, 1986 that defendants had "plenty of evidence" to support their RICO claims:
>
> \* \* \* \* \* \*
>
> (e) *My personal belief in the truth* of the statements made by John Montgomery on June 9, 1983, that in his opinion the Itel facility failed because of the actions of Norman Ehrentraut;

*Affidavit of Silvia T. Hassell,* at 6–8 (emphasis added). As noted earlier, the Fifth Circuit has specifically held that an attorney must evaluate the facts using an objective, rather than subjective, standard of reasonableness. *Robinson,* 808 F.2d at 1127. Urquhart & Hassell's decision to go forward with the Rico claims up until the week before the trial was not an objectively reasonable decision in light of facts uncovered during discovery.

■ Therefore, this Court finds that Ms. Hassell's decision not to dismiss the counterclaim against Mr. Ehrentraut constituted a clear violation of Rule 11. Her failure to make an objective evaluation of the facts caused Mr. Ehrentraut to suffer unnecessarily the financial and emotional strains of being a litigant in this action. Additionally, her decision further complicated this matter for Chapman & Cole, prolonging the outcome and forcing Chapman & Cole to absorb additional, unnecessary litigation costs. For this reason, both Mr. Ehrentraut and Chapman & Cole should receive some degree of indemnification for Ms. Hassell's imprudent actions. Therefore, since this Court finds that the conduct of the signing attorney, Ms. Hassell, was improper and unreasonable under Rule 11, the Court is required to fashion an appropriate sanction.[1] *Fed.R.Civ.P. 11; Robinson,* 808 F.2d at 1130 ("By employing the word "shall" the drafters intended to stress the mandatory imposition of sanctions when the requirements of Rule 11 have been violated.")

### B. *Discovery Abuses*

In connection with the above Rule 11 violations, this Court also finds that Urquhart & Hassell abused the discovery process in violation of Rule 26(g). Rule 26(g) provides in pertinent part:

> Every request for discovery or response or objection thereto made by a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated.... The signature of the

---

**1.** This Court has considered the evidence relied upon by Ms. Hassell in bringing the Texas Deceptive Trade Practices Act claims and finds, given the broad scope of the statute, that Ms. Hassell's actions in bringing those claims does not warrant an imposition of sanctions.

attorney or party constitutes a certification that he has read the request, response, or objection, and that to the best of his knowledge, information, and belief formed after a reasonable inquiry it is: ... (2) not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; and (3) not unreasonable or unduly burdensome or expensive, given the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation....

*Fed.R.Civ.P. 26(g).* In its note to subsection (g), the Advisory Committee on rules points out that Rule 26(g) imposes an affirmative duty on attorneys "to engage in pretrial discovery in a responsible manner." Additionally, the note continues: "Rule 26(g) is designed to curb discovery abuse by explicitly encouraging the imposition of sanctions." *See ACF Industries, Inc. v. EEOC,* 439 U.S. 1081, 99 S.Ct. 865, 59 L.Ed.2d 52 (1979). As the Advisory Committee's note indicates, the test to be used when evaluating whether the attorney conducted a "reasonable inquiry" is an objective one similar to that imposed under Rule 11:

> The duty to make a "reasonable inquiry" is satisfied if the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances. It is an objective standard similar to the one imposed by Rule 11.... Ultimately what is reasonable is a matter for the court to decide on the totality of the circumstances.

*Fed.R.Civ.P.* 26(g), Advisory Committee on Rules, note to subdivision (g).

 This Court finds that much of the discovery conducted by Urquhart & Hassell in connection with the alleged Rico claims was unreasonable, unnecessary, and unduly burdensome given the facts known by the attorneys early on in this action. *See Fed.R.Civ.P.* 26(g). As noted in the previous section of this Memorandum and Order, the clear and convincing evidence

throughout this case indicated that the payments made to Mr. Ehrentraut were for legitimate work performed by him for Dan-Tex Erectors. Notwithstanding the weight of the evidence, Urquhart & Hassell continued to conduct extensive discovery in the hope of finding some evidence of illegal activity. After numerous depositions failed to produce even a shred of evidence of illegal activity, Urquhart & Hassell retook the depositions of Mr. Treat and Mr. Chapman. Still, without a single shred of evidence to support their claims, Urquhart & Hassell requested permission to take Mr. Treat's deposition for a third time to inquire into his bank records. Contrary to this Court's express order, a review of the deposition transcript indicates that Urquhart & Hassell used this opportunity to go over questions previously asked of Mr. Treat.

In addition to the numerous depositions, Urquhart & Hassell required non-party witnesses to produce voluminous amounts of unnecessary documents. The facts indicate that one such witness, Mr. Brent Warren, a partner of Mr. Ehrentraut in business activities unrelated to the Itel project, was required to produce volumes of bank records and checks pursuant to Itel's discovery request. No evidence of kickbacks or other illegitimate activity was ever produced from Mr. Warren's records.

As noted earlier, the facts also indicate that Urquhart & Hassell abused the discovery process by attempting to intimidate at least one nonparty witness in an effort to elicity testimony to support the Rico claims. Mr. Lester Schalit testified in open court that Urquhart & Hassell threatened him with potential lawsuits and accused him of taking kickbacks. During the Show Cause Hearing, Ms. Hassell and Mr. Urquhart denied these allegations. However, the trial transcript clearly shows that when given the opportunity, Urquhart & Hassell chose not to cross-examine Mr. Schalit regarding these very damaging allegations. In addition, the transcript of Mr. Schalit's deposition indicates that Mr. Urquhart told Mr. Schalit that he had been informed that

Mr. Schalit had taken kickbacks. When asked by Mr. Barnett who his source of that information was Mr. Urquhart replied that Mr. Barnett would find out during the trial. *See* First Amended Motion for Sanctions of the Plaintiffs, filed January 20, 1985, at 8–9. The trial and Show Cause Hearing have now been completed and as yet no credible source for Mr. Urquhart's allegation has ever been produced.

As this Court noted in the "Findings of Fact and Conclusions of Law" entered in this action, the manner in which Urquhart & Hassell conducted its discovery in this case caused unnecessary delays, unduly burdened witnesses and needlessly increased the costs of this litigation. The attorneys' actions were not objectively reasonable under the circumstances and, therefore, merit sanctions pursuant to Rule 26(g), Fed.R.Civ.P.

### C. *Plaintiffs' Fifth Set of Interrogatories to Defendant*

■ The final issue that this Court raised in the May 5, 1987 Notice of Hearing, involved Plaintiffs' Fifth Set of Interrogatories. Initially, this Court ordered the defendant, Itel Container Corp., to show cause why this Court should not impose sanctions for authorizing its agent, Mr. Allen P. Goldade, to sign answers to interrogatories which he testified at trial he did not know were true at the time he signed them. The defendants' argued in response that it was required to have an agent sign the interrogatories on behalf of the corporation even if the agent lacked personal knowledge of information contained in the answers. This Court finds this to be an accurate statement of the law.

Fed.R.Civ.P. 33(a) provides that where interrogatories are directed at a corporation, the corporation must designate someone to answer on its behalf with "such information as is available to the party." *United States v. Kordel,* 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970). With reference to interrogatories propounded upon a corporation, the phrase "such information as is available to the party" has been construed to mean all information available to the corporation's officers, directors, employees and attorneys. *See General Dynamics Corp. v. Selb Mfrs. Co.,* 481 F.2d 1204, 1210–11 (8th Cir.1973). Therefore, the agent signing the answers to interrogatories on behalf of the corporation cannot limit his answers to only information within his personal knowledge. *Id.*

In the present action, Mr. Goldade signed the answers to Plaintiff's Fifth Set of Interrogatories as "authorized agent for defendant Itel Container International B.V." *See* Defendants' Answers to Plaintiff's Fifth set of Interrogatories. Therefore, it was not necessary that Mr. Goldade have personal knowledge of all the information contained within the corporation's answers. In fact, the corporation was obligated pursuant to Fed.R.Civ.P. 33(a) to provide all information available to Itel's officers, directors, employees, and attorneys. As such, Mr. Goldade's act of signing the answers to the interrogatories as an agent of Itel, without personal knowledge of all the information contained therein, does not merit the imposition of sanctions.

■ What clearly does merit sanctions, however, is defendants' incomplete answer to Interrogatory No. 4 contained in Plaintiff's Fifth Set of Interrogatories. As previously stated, Fed.R.Civ.P. 33(a) mandates that a corporation answering interrogatories furnish *all information* available to its officers, directors, employees and attorneys. *See General Dynamics,* 481 F.2d at 1210. It is clear, that Itel's answer to Interrogatory No. 4 was incomplete and therefore must be treated as a failure to respond. *See* Fed.R.Civ.P. 37(a)(3); *Dollar v. Long Mfg., N.C., Inc.,* 561 F.2d 613, 616 (5th Cir.1977).

The question asked by plaintiffs' in Interrogatory No. 4 is clear and specific:

INTERROGATORY NO. 4:

Please state with specificity and particularity all of the documents, records, memoranda, written indicia and/or any other evidence, whether or not written which indicate or support the allegation that Mr. Norman Ehrentraut "knowingly

solicited and accepted benefits and payments from subcontractors involved in constructing the Itel facility on the agreement or understanding that the benefits and payments would influence the conduct of third party defendant in relation to the affairs of his employer."

Itel's answer to Interrogatory No. 4 was equally clear and specific:

ANSWER:

Copies of cancelled checks evidencing payments from E.J. Novotny and Dantex Erectors are attached hereto.

The problem with Itel's answer is that it failed to disclose material information known to the corporation's in-house and trial counsel; namely, the existence of the tape recorded telephone conversation between Ms. Hassell and Mr. Montgomery.

Itel argues that its answer to Interrogatory No. 4 was not incomplete for two reasons. First, Itel argues that "the plain text" of plaintiff's interrogatory was directed only to the identification and production of evidence. *See* The Reply of Itel to Plaintiffs' Reply to Defendants' Response on Rule 11 Motion and Statement of Position, Fact and Law pertaining to this Court's Hearing of May 11, 1987, at 17. Specifically, Itel argues that the phrase "and/or any other evidence" was intended to limit the scope of plaintiffs' inquiry to include only items that would be admitted into evidence by the defendants. As such, Itel claims that the interrogatory "did not address the tape or the tape transcript [because] by definition both are not evidence." *Id.* at 17. Itel's interpretation of the text of Interrogatory No. 4 is not objectively reasonable. Reading the interrogatory as a whole, it is clear that plaintiffs did not intend for Itel to identify and produce only those documents which Itel intended to offer into evidence at trial. It should have been clear to Itel that the phrase "and/or other evidence" was added to broaden the scope of plaintiffs' request, not limit it. Therefore, Itel's first explanation for its failure to include within its answer the telephone conversation with Mr. Montgomery is wholly inadequate.

The second explanation offered for Itel's failure to include the conversation with Mr. Montgomery in its response to Interrogatory No. 4 is equally unpersuasive. In support of their decision not to disclose the existence of the tape or transcript, Itel and its attorneys argue that "the immunity protecting both the tape and the transcript eliminates by operation of law the need to identify or disclose either the tape or the tape transcript." *See* The Reply of Itel to Plaintiff's Reply to Defendants' Response on Rule 11 Motion and Statement of Position, Fact and Law Pertaining To The Court's Hearing of May 11, 1987, at 17–18. Essentially, the argument made on Itel's behalf by its attorneys is that the tape and tape transcript contained the mental impressions of Ms. Hassell which are protected under the work product doctrine contained in Fed.R.Civ.P. 26(b)(3).

The problem with Itel's response is that it assumes too much and goes beyond what is actually protected under Rule 26(b)(3). To begin with, Itel's response assumes that this Court would have agreed with the attorney's assessment of the contents of the tape and transcript. Having now completed an *in camera* review of the tape and transcript, this Court finds that only a very small portion of the transcript contains Ms. Hassell's mental impressions, conclusions, opinions or legal theories concerning this litigation. As the Notes of the Advisory Committee on Rules indicates, a Court may find it necessary to order disclosure of a document that contains relevant facts but with portions of the document deleted to protect the attorneys mental impressions and opinions. *See* Fed.R.Civ.P. 26, Notes of the Advisor Committee on Rules. This court have been done rather easily in this case with the tape transcript. In any event, this was a decision that should have been made by this Court after Itel identified the existence of the tape in Plaintiff's Interrogatory No. 4. It was certainly not a decision that Itel's attorneys should have made on their own. As one Court has stated, "[i]n the final analysis, it is the Court's duty and not the duty of the one

asserting the privilege to determine whether a communication is, in fact, privileged." *See International Tel. & Tel. Corp. v. United Tel. Co. of Florida*, 60 F.R.D. 177, 185 (M.D.Fla.1973).

Therefore, this Court finds that Itel's response to Plaintiff's Interrogatory No. 4 was incomplete. Rule 33 requires that an interrogatory be fully answered by the party or that objection to it and the grounds of objection be stated. Fed.R.Civ.P. 33. As the Fifth Circuit has noted:

> Discovery by interrogatory requires candor in responding.... The candor required is a candid statement of the information sought or of the fact that objection is made to furnishing the information. *A partial Answer by a party reserving an undisclosed objection to answering fully is not candid. It is evasive.*

*Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 616–17 (5th Cir.1977). The Rule 33 requirement that a party disclose its objections to an interrogatory applies to all privileges, including the work-product qualified immunity from discovery. *See Dollar*, 561 F.2d 613; *Compagnie Francaise D'Assurance v. Phillips Petroleum*, 105 F.R.D. 16 (S.D.N.Y.1984); *In re Shopping Carts Antitrust Litigation*, 95 F.R.D. 299 (S.D.N.Y. 1982); *International Telephone and Telegraph Corp. v. United Telephone Co. of Florida*, 60 F.R.D. 177 (M.D.Fla.1973).

Since Itel provided only a partial response to Interrogatory No. 4 without disclosing the work-product objection, its answer must be treated as an incomplete and evasive answer. *See Dollar*, 561 F.2d 613. Rule 37(a)(3) makes clear that "an evasive or incomlplete answer is to be treated as a failure to answer." Fed.R.Civ.P. 37(a)(3). Pursuant to Rule 37, this Court has the power to impose sanctions upon the defendants and their counsel for their incomplete and evasive answer to Interrogatory No. 4. *See Moody v. Schwartz*, 97 F.R.D. 741 (S.D.Tex.1983). In addition, this Court also has the power to impose sanctions, pursuant to Rule 26(g), against the defendants and their counsel for failing to disclose the existence of the telephone conversation with Mr. Montgomery. Given the fact that the defendants' incomplete and evasive response needlessly prolonged the litigation of defendants' meritless Rico claim, this Court finds that sanctions should be imposed.

CONCLUSION

This Court finds that given the severity of the above stated actions, sanctions should be imposed pursuant to Rules 11, 26 and 37, Fed.R.Civ.P.

Accordingly, it is ORDERED, ADJUDGED, and DECREED that Plaintiff's Motion for Sanctions is hereby GRANTED, and that pursuant to this Order sanctions in the amount of $20,000 are hereby imposed against the defendants' and its attorneys, Urquhart and Hassell, to be paid in the following manner: $10,000 to be paid by the defendants; Itel Container International B.V., *et al.;* and $10,000 to be paid by the defendants' attorneys, Urquhart and Hassell. It is further ORDERED that payment of the $20,000 be made in the following manner; $5,000 to third-party defendant, Norman Ehrentraut, as attorneys fees; and $15,000 to plaintiffs; Chapman and Cole, *et al.*, for costs and attorneys fees associated with this matter.

Payment of the above amounts shall be made on or before September 1, 1987, in the manner prescribed by this Order. The defendants and their counsel shall supply this Court with copies of the cancelled checks as proof of payment.